UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Criminal Case No. 00-cr-00531-WYD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. WILLIAM CONCEPCION SABLAN,
2. RUDY CABRERA SABLAN,

      Defendants.

_____

**ORDER**
_____

**DANIEL, Judge**

I.     INTRODUCTION

     THIS MATTER is before the Court in connection with the parties' legal challenges

to the death penalty ("Phase II Challenges").  By way of background, on May 1, 2001, the

Government filed a Notice of Intent ("NOI") to seek the death penalty pursuant to the

Federal Death Penalty Act [hereinafter "FDPA"], 18 U.S.C. §§ 3591-3596, as to both

Defendants in this case.  Amended Notices of Intent to Seek the Death Penalty were filed

December 21, 2005.

     During the week of December 5, 2005, the Court held a hearing concerning

Defendants' objections to the NOIs as well as Defendants' constitutional challenges to

various provisions of the FDPA.  This Order addresses the issues raised in the December

2005 hearing as set forth in the Defendants' Phase II Challenges.

II.   ANALYSIS

A.   Facial Constitutional Challenges

I first address Defendants' facial challenges to the FDPA as set forth in William

Sablan's Motion to Strike the Government's Notice of Intent to Seek the Death Penalty on

the Grounds that The Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.*, Is Facially

Unconstitutional, and Memorandum Brief in Support, filed August 29, 2005,  and

Defendant Rudy Sablan's Motion to Preclude Consideration of the Death Penalty for

Unconstitutional Provisions and Procedures Established by 18 U.S.C. § 3591, *et seq.*, filed

September 2, 2005.  The Government filed a consolidated Response to these Motions on

October 21, 2005.  Defendant William Sablan filed a Reply on November 17, 2005.

Defendants raise multiple facial challenges to the FDPA, 18 U.S.C. § 3591, *et seq.*

As an initial matter, I note that a facial challenge to a federal statute is difficult to mount.

To succeed on any of their facial challenges, Defendants must show that due to the

alleged defects in the FDPA there exists "no set of circumstances exists under which the

Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).

1.   Fifth Amendment Grand Jury Clause

First, both Defendants contend that the FDPA violates the Grand Jury Clause of the

Fifth Amendment to the United States Constitution because it does not require that "facts

essential to a death sentence" — namely, all statutory and nonstatutory aggravating

factors — be presented to a grand jury and charged in the indictment.  The FDPA permits

the Government to seek the death penalty by filing a written notice at "a reasonable time

before trial . . . setting forth the aggravating factor or factors the government . . . proposes

to prove as justifying a sentence of death." 18 U.S.C. § 3593(a)(1) & (2). In order for a defendant to be eligible for the death penalty, the jury must find the existence of at least one enumerated mental state and at least one statutory aggravating factor. 18 U.S.C. §§ 3591(a)(2) & 3592(c). If the jury determines a defendant is "death eligible," it must then review any nonstatutory aggravating factors as well as any mitigating factors and "consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death." 18 U.S.C. § 3593(e). The FDPA does not require the Government to charge statutory or nonstatutory aggravating factors in the indictment nor does it require the Government to present statutory and nonstatutory aggravating factors to a grand jury.

The Grand Jury Clause of the Fifth Amendment to the United States Constitution states that "[n]o person shall be held to answer for a capital . . . crime, unless on presentment or indictment of a Grand Jury . . .." U.S. Const. Amend. V. Defendants contend that pursuant to the United States Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Ring v. Arizona*, 536 U.S. 584 (2002); and *Blakely v. Washington*, 542 U.S. 296 (2004), all aggravating factors, including nonstatutory aggravating factors, must be presented to a grand jury and charged in the indictment. Several circuit courts have found the holdings in *Ring*, *Apprendi*, and *Jones v. United States*, 526 U.S. 227 (1999) applicable to the Fifth Amendment Grand Jury Clause and concluded that the Fifth Amendment requires that at least one statutory aggravating factor that allows for imposition of the death penalty must be presented to a grand jury and charged in the indictment. *See United States v. Allen*, 406 F.3d 940, 943 (8th Cir. 2005)

-3-

("We therefore conclude that the Fifth Amendment requires at least one statutory aggravating factor and the mens rea requirement to be found by the grand jury and charged in the indictment"); *see also United States v. Robinson*, 367 F.3d 278, 284 (5th Cir.), *cert. denied*, 543 U.S. 1005 (2004); *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003); *United States v. Quinones*, 313 F.3d 49, 53 n.1 (2d Cir. 2002). I agree with the reasoning in these cases and adopt that reasoning here.

Although the FDPA does not require the Government to charge statutory aggravating factors in the indictment and present them to the grand jury, it does not preclude the Government from doing so. In this case, the Government did in fact charge the culpability and statutory aggravating factors (but not the nonstatutory aggravating factors) in the Second Superseding Indictment and present those factors to the grand jury. Because the FDPA does not prevent the Government from fulfilling its obligations under the Grand Jury Clause of the Fifth Amendment, I reject Defendants' contention that the FDPA is facially unconstitutional under the Grand Jury Clause. *See Allen*, 406 F.3d at 949; *Robinson*, 367 F.3d at 290; *United States v. Barnette*, 390 F.3d 775, 789 (4th Cir. 2004), *vacated on other grounds*, 126 S. Ct. 92 (2005).

As to nonstatutory aggravating factors, I find that the Government has no Fifth Amendment obligation to charge nonstatutory aggravating factors in the indictment and present them to the grand jury. According to Defendant, under *Ring, Apprendi*, and *Jones*, nonstatutory aggravating factors must be charged in the indictment and presented to the grand jury because they expose a defendant to a greater punishment than that authorized by the jury's guilty verdict alone. I disagree and find that nonstatutory aggravating factors

do not increase the level of punishment to which a defendant may be subjected. As described above, the jury may only consider nonstatutory aggravating factors after making an initial determination that a defendant is eligible to receive the death penalty. *See United States v. Bourgeois*, 423 F.3d 501, 507 (5th Cir. 2005), *petition for cert. filed* (U.S. Jan. 9, 2006) (No. 05-8557); *Higgs*, 353 F.3d at 298; *United States v. Hargrove*, No. 03-20192-CM, 2005 WL 1041340, at *2 (D. Kan. Feb. 25, 2005). Because I find that the Fifth Amendment does not require the Government to charge nonstatutory aggravating factors in the indictment and present them to the grand jury, the fact that the FDPA does not contain such a requirement does not render the statute facially unconstitutional.

a.   Motions to Strike

Because I reject Defendants' facial challenge to the FDPA under the Grand Jury Clause of the Fifth Amendment, I must also deny Defendant William Sablan's Motion to Strike the Nonstatutory Aggravating Factor of Future Dangerousness from the Government's Notice of Intent to Seek the Death Penalty on the Grounds that the Factor Was Not Presented to the Grand Jury In Violation of the Fifth Amendment, filed August 29, 2005. In this motion, Defendant William Sablan requests that I strike the nonstatutory aggravating factor of "future dangerousness" from the Government's NOI because this nonstatutory aggravator was never presented to the grand jury. As discussed above, the Government has no obligation under the Fifth Amendment to present nonstatutory aggravators to the grand jury.

I also deny Defendant William Sablan's Motion to Strike "Notice of Special Findings" From the Second Superseding Indictment on the Grounds that the Grand Jury Has No

Authority to Make Death-Eligibility Findings, filed August 29, 2005.  Here, Defendant

William Sablan requests that this Court strike the "Notice of Special Findings" from the

Second Superseding Indictment on the grounds that the grand jury was without authority

to render them.  Defendant suggests that construing the FDPA as providing for grand jury

indictments on death-eligibility matters would render the government-notice provision

wholly superfluous.  Defendant's argument is inconsistent with his prior argument that all

facts relevant to Defendant's eligibility for the death sentence under the FDPA *must* be

charged in the indictment and presented to the grand jury.  As discussed above, while the

FDPA does not provide for or require the Government to charge a culpability factor or

statutory aggravating factors in an indictment and present them to the grand jury, nothing

in the FDPA precludes the Government from doing so.   *See Allen*, 406 F.3d at 949;

*Robinson*, 367 F.3d at 290.

### 2.   Scope of the FDPA

Next, Defendants assert that the FDPA fails to narrow the class of persons eligible

for the death penalty from the category of persons convicted of crimes involving other

"intentional" killings.  Pursuant to *Zant v. Stephens*, 462 U.S. 862 (1983), a constitutional

death penalty statute must "genuinely narrow the class of persons eligible for the death

penalty and must reasonably justify the imposition of a more severe sentence on the

defendant compared to others found guilty of murder."   *Id*. at 877.  In accord with the

appellate courts that have addressed this issue, I conclude that the FDPA meets the

constitutional requirements described in *Zant*.  *See United States v. Allen*, 247 F.3d 741,

761 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002).  First, the FDPA only

authorizes the death penalty for certain federal crimes.  Second, the FDPA further narrows the class of persons eligible for death by requiring that the jury find that the defendant had the requisite intent and the presence of at least one statutory aggravating factor.  *See United States v. Jones*, 132 F.3d 232, 248 (5th Cir. 1998) ("[t]he use of aggravating factors helps to narrow the class of death-eligible persons . . . .") (citing *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1987)), *aff'd*, 527 U.S. 373 (1999).  Defendants complain that the list of statutory aggravating factors under 18 U.S.C. § 3592(c) is too broad.  I disagree.  18 U.S.C. § 3592(c) lists sixteen aggravating factors for homicide.  Consideration of the existence any of these aggravators for which proper notice has been given "helps to channel the jury's discretion by allowing the jury to consider the circumstances of the crime when deciding the propriety of the death sentence."  *Jones*, 132 F.3d at 249.

### 3.   Use of Nonstatutory Aggravating Factors

Defendants challenge the use of nonstatutory aggravating factors on several grounds.  These are considered separately below.

### a.   Unconstitutional Delegation

First, Defendants assert that the use of nonstatutory aggravating factors constitutes an unconstitutional delegation of legislative power to the Executive Branch, because the FDPA does not limit a prosecutor's discretion to allege any fact as a nonstatutory aggravating factor.  As Defendants acknowledge, this argument was rejected in *United States v. McVeigh*, 944 F. Supp. 1478, 1486 (D. Colo. 1996).  In addition, the Tenth Circuit in *United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996), stated that "[t]he prosecutorial discretion to promulgate nonstatutory aggravating factors falls squarely within the

permissible delegation of power to the Executive Branch." *Id.* At 1106. I concur with the reasoning in *McVeigh* and adopt it here.

b.   Discretion of Jury

Next Defendants contend that the use of nonstatutory aggravating factors fails to limit and guide the discretion of the jury in violation of the Eighth Amendment. Defendants assert that by permitting different prosecutors to select the nonstatutory aggravating factors they choose to present in an individual case, the FDPA injects arbitrariness and capriciousness into the capital sentencing process. I disagree. "At the selection stage of a capital proceeding, the focus is on 'an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.'" *McCullah*, 76 F.3d at 1106 (quoting *Zant v. Stephens*, 462 U.S. 862, 879 (1983) (emphasis in original)). As the Tenth Circuit recognized in *McCullah*, the use of relevant nonstatutory aggravators serves to individualize the capital sentencing process and, thus, makes imposition of the death penalty <u>less</u> arbitrary and capricious. *Id.* at 1106-07.

c.   Proportionality Review

Defendants also object to the FDPA's use of nonstatutory aggravating factors without providing for proportionality review. In *Pulley v. Harris*, 465 U.S. 37, 43 (1984), the United States Supreme Court found that while proportionality review is an additional safeguard against arbitrary imposition of the death penalty, it is not constitutionally required in capital cases. *See McVeigh*, 944 F. Supp. at 1486. Indeed, the Eighth Circuit has concluded that "proportionality review is not required in order for the FDPA to pass constitutional muster." *United States v. Allen*, 247 F.3d 741, 760 (8th Cir. 2001), *vacated*

-8-

*on other grounds*, 536 U.S. 953 (2002).  In *Allen*, the Eighth Circuit reasoned that the FDPA's requirement that a jury find beyond a reasonable doubt the existence of one culpability factor and one statutory aggravating factor, as well as the other procedural protections contained in the statute, were sufficient safeguards against arbitrary imposition of the death penalty.  *Id.* at 760.  In accord with *Allen*, I conclude that the FDPA's failure to provide for proportionality review does not render the statute facially unconstitutional.

d.    Ex Post Facto Clause

Finally, Defendants contend that the use of nonstatutory aggravating factors violates the Ex Post Facto Clause by permitting the prosecution to manufacture aggravating factors after a crime was committed and apply them retroactively.  The Ex Post Facto Clause, U.S. Const., Article I, section 9, cl. 3, protects against laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990).  The argument was advanced by the defendant in *McVeigh*, wherein the court stated that the enactment of the FDPA "was a change in sentencing procedure, not a change in the definition of a crime or an increase in the punishment."  *McVeigh*, 944 F. Supp. at 1486.  I agree that the use of nonstatutory aggravating factors neither alters the definition of the death eligible crimes nor increases the punishment for those crimes because consideration of any nonstatutory aggravators does not occur until the defendant has already been found eligible to receive the death penalty.  *See United Sates v. Higgs*, 353 F.3d 281, 322 (4th Cir. 2003) ("nonstatutory aggravating factors and mitigating factors are weighed by the jury to make the individualized determination to impose the death sentence upon a defendant who has

already been found eligible.  They do not increase the possible punishment or alter the elements of the offense.").

### 4.  Evidentiary Standards

Defendants both object to the provision in the FDPA, which allows the Government and defendant to present "any information relevant" during the penalty phase of a capital sentencing proceeding, "regardless of its admissibility under the rules governing the admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  18 U.S.C. § 3593(c).  In support of their argument, Defendants cite *United States v. Fell*, 217 F. Supp. 2d 469 (D. Vt. 2002), a case in which the United States District Court for the District of Vermont found the FDPA unconstitutional because it "bases a finding of eligibility for imposition of the death penalty on information that is not subject to the Sixth Amendment's guarantees of confrontation and cross-examination, nor to rules of evidentiary admissibility guaranteed by the Due Process Clause . . . ."  *Id.* at 489.  However, as noted by the Government, the Second Circuit reversed the District Court decision in *Fell* and held that the FDPA's relaxed evidentiary standard did *not* render the statute unconstitutional because nothing in the FDPA alters a court's "inherent obligation to exclude evidence the admission of which would violate a defendant's Constitutional Rights."  *See United States v. Fell*, 360 F.3d 135, 138 (2d Cir.), *cert. denied*, 543 U.S. 946 (2004); *see also United States v. Lee*, 374 F.3d 637, 648 (8th Cir. 2004) ("[w]e agree with the Second Circuit that the FDPA standard does not impair the reliability of the evidence admissible during the penalty phase."), *cert. denied*, 125 S. Ct.

2692 (2005); *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1052 (because "courts are still bound by constitutional dimensions . . . the evidentiary standard articulated in the FDPA remains constitutional."). As noted by the Second Circuit, "[t]he FRE . . . do not set forth the constitutional parameters of admissible evidence, nor does a criminal defendant have a constitutional right to have the FRE in place." *Fell*, 360 F.3d at 144. In fact, the Federal Rules of Evidence are generally inapplicable in sentencing proceedings before a judge and "afford broader protection than required by the Constitution by excluding evidence that would be constitutionally permissible." *Id.* I find the Second Circuit's reasoning in *Fell* persuasive. I agree that § 3593(c) does not render the FDPA facially unconstitutional because it does not prevent a court from excluding unconstitutional evidence when proffered. *See also McVeigh*, 944 F. Supp. at 1487 (refusing to find § 3593(c) unconstitutional and noting that the trial court has considerable discretion to control the presentation of the "information" to the jury).

      5.   <u>Standard of Proof</u>

18 U.S.C. § 3593(e) provides that once the jury has found a defendant eligible to receive the death penalty, the jury shall then "consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote . . . shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." Defendant William Sablan asserts that this provision in

the FDPA violates the holdings in *Jones v. United States*, 526 U.S. 227, 243 n. 6 (1999) and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 2537 (2004), as well as the Eighth Amendment because the jury is not required to find that the aggravating factors outweigh the mitigating factors and that a sentence of death is justified "beyond a reasonable doubt." *Jones* and its progeny generally hold that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt.

In response, the Government notes that the FDPA does not prohibit the jury from making the finding described in § 3593(e) beyond a reasonable doubt and, therefore, cannot be considered facially unconstitutional on this basis. Alternately, the Government asserts that the reasonable doubt standard does not govern the weighing process in a federal capital case. *See United States v. Flores*, 63 F.3d 1342, 1376 (5th Cir. 1995) ("the Supreme Court has 'never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.'"); *United States v. Chandler*, 996 F.2d 1073, 1091-93 (11th Cir. 1993) ("[a] capital sentencing scheme is constitutional even if it does not require that a specific burden of proof govern the jury's weighing process."). I note that the cases cited by the Government, *Flores* and *Chandler,* were decided prior to the United States Supreme Court's decision in *Jones*, *supra*. The application of *Jones* and *Ring v. Arizona*, 536 U.S. 584 (2002) to § 3593 was discussed by the United States District Court for the District of Massachusetts in *United States v. Sampson*, 245 F. Supp. 2d 327 (D. Mass 2003). In *Sampson*, the court found that the FDPA "is written in a way that survives the evolution of the constitutional law that

-12-

*Ring* represents," but noted in a footnote that the statute is silent as to whether "the jury must be persuaded beyond a reasonable doubt that aggravating factors sufficiently outweigh mitigating factors to justify the imposition of the death penalty." *Id.* at 335, n. 1. The Court also observed and that in the only Massachusetts case in which a jury has been required to consider the death penalty under the FDPA, the jury was instructed that the government had to prove beyond a reasonable doubt that the death penalty was justified. *Id.*

I agree that the FDPA does not set forth a standard of proof for the jury to apply when determining whether any aggravating factors outweigh any mitigating factors or in determining whether a death sentence is justified.  Because the FDPA does not prohibit a Court from requiring that the jury to make these findings "beyond a reasonable doubt," § 3593(d) & (e) are not facially unconstitutional under the Due Process Clause of the Fifth Amendment or the Eighth Amendment.   At this stage of the case, I do not need to determine whether *Ring* requires that I instruct the jury that it must find beyond a reasonable doubt that any aggravating factors found to exist outweigh any mitigating factors found to exist and whether a sentence of death is justified.

However, as discussed in section II.A.1., *infra*, the jury does not weigh the aggravating and mitigating factors to determine whether the death sentence is justified in a particular case until after it has determined that a defendant is "death eligible."  Thus, none of the facts "found" by the jury in the weighing phase subjects a defendant to a greater penalty than death because the jury has already determined that the defendant is eligible for death.  The weighing of aggravating and mitigating factors assists the jury in

-13-

determining whether a particular defendant, although eligible for the death penalty, should be given a sentence other than death.

### 6. Mitigating Factors

Defendant William Sablan contends that the FDPA provision providing that "information relevant to a mitigating factor . . . may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury," as set forth in 18 U.S.C. § 3593(c), is unconstitutional because the Eighth Amendment requires consideration of "any relevant mitigating evidence." *See Eddings v. Oklahoma*, 455 U.S. 104, 113-14 (1982) (citing *Lockett v. Ohio*, 438 U.S. 586 (1978) and holding that under the Eighth and Fourteenth Amendments, "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." (emphasis in original)).  The Government responds that the FDPA permits but does not mandate the exclusion of mitigating evidence.  As such, the Government contends that Defendant's facial attack on the FDPA must fail because the statute does not require exclusion of mitigating evidence in all circumstances.  While neither the Defendant nor the Government cites any relevant case law on this point, I agree with the Government that Defendant's facial attack on the FDPA must fail.  However, this issue may need to be revisited if and when the Government objects during the penalty phase to certain mitigation evidence proffered by Defendants on the grounds specified in § 3593(c).

### 7. Penalty-Phase Scheme

Defendant William Sablan next asserts that there is a reasonable likelihood that the

-14-

jury will be confused as to the concept of weighing aggravating and mitigating circumstances at the penalty phase of the proceeding, rendering the FDPA unconstitutional under the Fifth and Sixth Amendments. Defendant cites several studies set forth in various social science journals and law journals that purport to demonstrate juror confusion regarding these concepts. *See* Craig Haney, et al., *Deciding to Take a Life: Capital Juries, Sentencing Instructions, and the Jurisprudence of Death*, Journal of Social Issues, Vol. 50, No. 2, pp. 149-176 (1994); James Luginbuhl & Julie Howe, *Discretion in Capital Sentencing Instructions: Guided or Misguided?*, 70 Ind. L. J. 1161 (1995); William J. Bowers, *The Capital Jury Project: Rational, Design, and Preview of Early Findings*, 70 Ind. L. J. 1043 (1995); Craig Haney & Mona Lynch, *Comprehending Life and Death Matters: A Preliminary Study of California's Capital Penalty Instructions*, Law & Human Behavior, Vol. 18, No. 4, pp. 411-436 (1994). The studies cited by Defendant involve data gathered from interviews with capital-case jurors in California, North Carolina, Oregon and other states. None of the studies dealt specifically with the FDPA.

A jury instruction may be "constitutionally defective if there is a 'reasonable likelihood' that it misled the jury into sentencing the defendant to death." *Free v. Peters*, 12 F.3d 700, 703 (7th Cir. 1993) (citing *Boyde v. California*, 494 U.S. 370, 380 (1990)). The FDPA requires the jury, during the penalty phase, to determine whether proven aggravating factors sufficiently outweigh proven mitigating factors to justify a sentence of death. Obviously, at this stage of the proceedings the Court and counsel have not yet formulated the penalty phase jury instructions to be given in this case. Defendant essentially asserts that the FDPA's penalty scheme is so confusing that a jury will never

-15-

be able to comprehend the concepts of aggravating and mitigating factors, regardless of the instructions given, and will never be able to make a reasoned decision concerning whether to impose death sentence or a life sentence without the possibility of parole. I find no support for this assertion. Similar arguments, based on some of the same studies cited by Defendant in this case, have been rejected by other courts. *See United States v. Mikos*, No. 02 CR 137-1, 2003 WL 22110948, at **17-19 (N.D. Ill., Sept. 11, 2003) ("[t]here is no justification prior to trial for this court to hold that the sentencing jury will be unable to comprehend the provisions of the FDPA or the instructions provided by the court or counsel."); *United States v. Regan*, 228 F. Supp. 2d 742, 746 (E.D. Va. 2002); *United States v. Llera Plaza*, 179 F. Supp. 2d 444, 450 (E.D. Pa. 2001) (studies cited "do not establish that the concepts of aggravating and mitigating factors as used in the FDPA bear such a degree of intrinsic 'incomprehensibility' as to render them incapable of clarification through adequate jury instructions"). I find the reasoning in these cases persuasive and adopt it here.

### 8.   Automatic Review

Both Defendants challenge the provisions in the FDPA that provide for appellate review and remand. 18 U.S.C. § 3595(c)(2) provides that if, on appellate review, the court finds that:

> (A) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
>
> (B) the admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor; or

> (C) the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure,

the court "shall remand the case for reconsideration under section 3593 or imposition of a sentence other than death." *Id.* Defendants complain that these provisions eliminate plain error review and single out defendants sentenced to death under the FDPA for diminished appellate review in violation of the Due Process Clause of the Fifth Amendment.

As an initial matter, I question Defendants' standing to raise this argument at this stage of the proceedings, prior to being tried and sentenced to death under the FDPA. *See United States v. Cuff*, 38 F. Supp. 2d 282, 286 (S.D.N.Y. 1999) (harm to defendant that would be attributable to FDPA's appellate review procedures too speculative for the court to determine pretrial); *United States v. Williams*, No. S11 96 CR. 515 (MBM), 2004 WL 2980027, at *15 (S.D.N.Y. Dec, 12, 2004) (challenge to FDPA's appellate review procedures not ripe for determination pretrial). In any event, I note that the merits of Defendants' arguments were previously rejected in *McVeigh*. *McVeigh*, 944 F. Supp. at 1485. In *McVeigh*, the court rejected the defendant's equal protection challenge to the scope of appellate review under the FDPA and noted that the scope of review under the FDPA was actually broader than the scope of review provided for other criminal sentences. *Id.* at 1485. The court further noted that it was "unwilling to speculate as to the approach that the Tenth Circuit Court of Appeals may take with respect to the possible application of the 'plain error' doctrine and the scope of appellate review under the Constitution, in spite of any purported limitation in the statute." *Id.* Contrary to Defendants' contention in

this case, nothing in the FDPA "requires an appellate court to affirm a death verdict which was returned as a result of plain error," and I decline Defendants' request to find the FDPA facially unconstitutional on this basis.

Defendants also challenge the FDPA's failure to mandate automatic review of a death sentence under 18 U.S.C. § 3595(a), which provides that a defendant must file a notice of appeal and must do so "within the time specified for the filing of a notice of appeal." Defendants contend that several states provide for review of all death sentences, regardless of the defendant's wishes. While Defendants assert that the FDPA's lack of automatic review enhances the risk that factually innocent defendants will be executed, they cite no authority to support an argument that automatic review is constitutionally mandated. Defendants argument was rejected in *McVeigh*, where the court concluded that "[c]onjecture about a particular defendant's ability to make an informed and rational decision to appeal a sentence is not a basis for invalidating the Act." *McVeigh*, 944 F. Supp. at 1484-85. In accord with *McVeigh*, I find that the FDPA's lack of automatic review does not render the statute facially unconstitutional.

### 9.   Double Jeopardy

Defendant William Sablan also complains that 18 U.S.C. § 3595(c)(2)(B), which provides for remand for reconsideration when the record does not support a jury's finding of a aggravating factor, violates the Double Jeopardy Clause of the Fifth Amendment. Generally, the Double Jeopardy Clause prohibits the retrial of a defendant who has been acquitted of the crime charged. *Bullington v. Missouri*, 451 U.S. 430, 437 (1981). Again, I question whether Defendant has standing to challenge this provision at this stage of the

proceeding.  However, I find that even if the Double Jeopardy Clause is implicated in the event of a "remand for reconsideration" under § 3595(c)(2)(B), the statute is not facially unconstitutional because that section also provides that an appellate court could choose to remand the case for "the imposition of a sentence other than death." *See United States v. Cooper*, 91 F. Supp. 2d 90, 100 (D.D.C. 2000) (finding that because the FDPA allows the court the alternative of remanding for imposition of a sentence other than death, it does not compel the appellate court to violate double jeopardy).

10.   <u>Evidence of Unadjudicated Criminal Acts</u>

Finally, Defendant Rudy Sablan asserts that the Government intends to introduce evidence during the penalty phase concerning certain prior criminal acts not resulting in convictions in violation of the plain language of the FDPA and his rights under the Fifth, Sixth and Eighth Amendments.  According to Defendant Rudy Sablan, the Government intends to present evidence of what he describes as "minor offenses" and "incident reports" in order to demonstrate the existence of the nonstatutory aggravating factor of "future dangerousness."  Defendant Rudy Sablan contends that under the plain language of the FDPA, only criminal conduct that has resulted in a conviction for one of the crimes listed in § 3592(c) may be introduced in the penalty phase.  Defendant Rudy Sablan does not specify which unadjudicated acts the Government will seek to introduce, but notes that he had no right to any Sixth Amendment protections or right of confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004) in connection with the "institutional" incidents at issue.

In section II.E.1.b, *infra*, of this opinion, I rejected Defendant William Sablan's

constitutional challenge to the use of "future dangerousness" as a nonstatutory aggravating factor and also rejected his argument that the FDPA implicitly precludes the use of prior criminal acts to establish future dangerousness.  Adopting the same analysis used in that section, I reject Defendant Rudy Sablan's argument that only criminal conduct that has resulted in a conviction for one of the crimes listed in § 3592(c) may be introduced in the penalty phase.  Moreover, I note that the Tenth Circuit has held that "admission of evidence of unadjudicated offenses at a sentencing proceeding does not violate due process."  *See Boltz v. Mullin*, 415 F.3d 1215, 1231 (10th Cir. 2005), *petition for cert. filed* (Feb. 6, 2006) (No. 05-9129).

      B.      Eighth Amendment & Fifth Amendment Challenges (*Per Se*)

I next address the issues raised in Defendants' Motions challenging the constitutionality of the FDPA under the Eighth Amendment and the Due Process Clause of the Fifth Amendment as set forth in Defendant William Sablan's Motion to Strike the Death Penalty from Consideration on the Grounds that the Federal Death Penalty Experience under 18 U.S.C. § 848(e) and § 3591, *et seq.*, Operates in a Fundamentally Arbitrary and Capricious Manner and Therefore Violates the Fifth and Eighth Amendments, filed August 29, 2005; Defendant William Sablan's Motion to Strike the Death Penalty from Consideration on the Grounds that the Death Penalty Constitutes Cruel and Unusual Punishment in Violation of the Eighth Amendment and is a *Per Se* Violation of Due Process Under the Fifth Amendment, filed August 29, 2005; and Defendant Rudy Sablan's Motion to Preclude Consideration of the Death Penalty as Cruel and Unusual Punishment Per Se and As Applied to the Facts of This Case, filed September 2, 2005.  The

Government filed Responses to these Motions on October 21, 2005.  Defendant Rudy

Sablan filed a Reply on November 14, 2005, and Defendant William Sablan filed Replies

on November 17, 2005.

       1.    <u>Arbitrary and Capricious</u>

Defendant William Sablan requests that the Court strike the death penalty from

consideration in this case on the grounds that the FDPA operates in a fundamentally

arbitrary and capricious manner in violation of the Fifth and Eighth Amendments under

*Furman v. Georgia*, 408 U.S. 238 (1972).  In *Furman*, the Supreme Court held that under

the sentencing schemes in place at that time, the death penalty was "cruel and unusual"

punishment in violation of the Eighth Amendment because it was imposed infrequently,

arbitrarily and discriminatorily.  *Furman*, 408 U.S. at 240.  According to Defendant, the

FDPA suffers from the same infirmaries that existed at the time *Furman* was decided.

Defendant argues that since the enactment of the FDPA in 1988 (post *Furman*): (1) the

Government has pursued the death penalty in only 18% of potential capital cases, which

is slightly less frequent than under the sentencing schemes at issue when *Furman* was

decided; (2) there is no consistency or predictability in the manner in which federal juries

have imposed the federal death penalty; and (3) the federal death penalty is sought and

imposed on the basis of race of the defendant and the victim and on the basis of

geography.

Defendant has submitted to me the Declaration of Kevin McNally, Federal Death

Penalty Resource Counsel ("McNally Declaration") and "The Federal Death Penalty

System: A Statistical Survey," which includes data gathered from 1988 through 2000 (DOJ

Survey). McNally's Declaration summarizes statistical data concerning the frequency with which the federal death penalty has been sought and imposed since 1988, the race of the defendants prosecuted under the FDPA, and the frequency with which the federal death penalty is authorized and imposed on a regional basis.  In addition, at the December 2005 hearing, I heard testimony from Professor Michael L. Radelet, who opined that racial bias, particularly regarding the race of the victim, continues to impact which defendants are selected for prosecution under the FDPA.

I first address Defendant's assertion that the relative infrequent use of the FDPA means that the federal death penalty is impermissibly "arbitrary," in violation of the Eighth Amendment.   According to the McNally Declaration, of the 2,227 capital defendants eligible to receive the death penalty, only 18% of those, or 359 cases, have been selected for prosecution under the FDPA.  Of those 359 cases, 47 defendants are currently serving death sentences, and three defendants have been executed.  The relative infrequency with which the federal death penalty is imposed does not necessarily equate with arbitrariness. In *Furman*, the United States Supreme Court held that the death penalty could not be imposed where the sentencing procedures utilized created a substantial risk that it would be inflicted in an arbitrary and capricious manner.  *Furman*, 408 U.S. at 313.  Thus, when federal prosecutors decide whether to seek the death penalty in a particular case and when juries decide whether to impose the death penalty in a particular case, their "discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."  *Gregg*, 428 U.S. at 189.  Thus, "the [Supreme Court's] decision in *Furman* was based on the exercise of unguided discretion by juries rather than

on their infrequent imposition of the death penalty". *See United States v. Sampson*, 275 F. Supp. 2d 49, 88 (D. Mass. 2003).   A sentencing scheme that requires a jury to consider the special circumstances of a particular crime and a particular criminal using "clear and objective standards" will be deemed constitutional.  *Gregg*, 428 at 197.  I find that the FDPA, by requiring the weighing of aggravating and mitigating factors, provides clear and objective standards sufficient to guide the discretion of the jury in capital cases and meets the constitutional requirements set forth in *Furman*, and the fact that the federal death penalty is infrequently sought and imposed does not render it unconstitutional.  *Sampson*, 275 F. Supp. 2d at 88.

I also reject Defendant's argument that the FDPA violates the Eighth Amendment because there "is no principled legal basis distinguishing the cases where it is imposed from those where it is not."  Defendant has made clear that, to date, he has not raised a selective-prosecution claim under the Fifth Amendment's Due Process Clause.  Rather, Defendant's argument is based on Federal Death Penalty Resource Counsel Project's summaries of federal cases in which the Attorney General withdrew the notice of intent to seek the death penalty, federal capital cases resulting in a death sentence, federal death penalty cases resulting in execution, and federal death penalty cases in which the jury or judge has refused to impose the death penalty.  However, these summaries do not provide specific information concerning the characteristic of the defendant or the crime.  As the United States Supreme Court stated in *McClesky v. Kemp*, 481 U.S. 279 (1987), "[t]he Constitution is not offended by inconsistency in results based on the objective circumstances of the crime." *Id.* at 306, n.28.  Again, by requiring juries to consider the

individual characteristics of the defendant and specific circumstances of the crime, and thereby narrowing the class of individuals subject to the death penalty, the FDPA in effect recognizes that "a consistency produced by ignoring individual differences is a false consistency." *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982).

Finally, I address Defendant's argument that the FDPA violates due process and equal protection because it is sought and imposed on the invidious basis of race and the irrational basis of geography. The DOJ Study on which Defendant relies reports that between 1995 and 2000, of the 159 defendants authorized for prosecution under the FDPA, 44 defendants were White (27.7%), 71 were Black (44.7%), 32 were Hispanic (20.1%) and 26 were classified as Other (7.5%). The DOJ Study goes on to report how many defendants in each group were convicted and how many were sentenced to death. The DOJ Study also reports that between 1995 and 2000 the Attorney General sought the death penalty 61 of 167 (37%) eligible death penalty cases involving White victims but sought the death penalty in only 81 of the 383 (21%) eligible death penalty cases involving Black, Hispanic, or Other victims. Finally, the DOJ Study reflects that federal prosecutors in Southern districts (Texas, Virginia, Missouri, and Florida in particular) recommend and obtain more death sentences that federal prosecutors in other districts. From this DOJ Study, Defendant concludes that the federal death penalty is sought and imposed on the basis of race and geography. This conclusion is flawed for the reasons set forth in *United States v. Sampson*, 275 F. Supp. 2d at 89-91 and *United States v. Bin Laden*, 126 F. Supp. 2d 256 (S.D.N.Y. 2000), which I find persuasive. Notably, the DOJ Study does not provide information concerning what percentage of individuals committing death eligible offenses

are minorities or whether individuals "similarly situated . . . have not been capitally-prosecuted in other federal districts." *Sampson*, 275 F. Supp. 2d at 90; *Bin Laden*, 126 F. Supp. 2d at 263 (the 2000 DOJ Study failed to show a "constitutionally unacceptable risk that geography plays an inappropriate role in federal capital decision-making" with respect to their prosecution). Therefore, I reject Defendant's assertion that application of the FDPA on its face offends the concepts of due process and equal protection.

2.   Cruel and Unusual Punishment

Both Defendants move to preclude consideration of the death penalty on the grounds that it constitutes cruel and unusual punishment in violation of the Eighth Amendment. Defendant William Sablan asserts that the FDPA constitutes cruel and unusual punishment in violation of the Eighth Amendment and is a *per se* violation of the Due Process Clause under the Fifth Amendment. Similarly, Defendant Rudy Sablan asserts that the death penalty is unconstitutional *per se* as a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

Defendants acknowledge that the United States Supreme Court has found the death penalty "as a general proposition" to be constitutional under *McClesky v. Kemp*, 481 U.S. 279, 300-03 (1987). Nevertheless, Defendants contend that in determining whether punishments are so disproportionate as to be "cruel and unusual" the appropriate standard is one based upon "evolving standards of decency that mark the progress of a maturing society." *Roper v. Simmons*, 543 U.S. 551 (2005) (abrogating *Stanford v. Kentucky*, 492 U.S. 361 (1989) and holding that the Eighth Amendment prohibited execution of individuals under 18 at the time of their crime); *see also Atkins v. Virginia*, 536 U.S. 304 (2002)

(abrogating *Penry v. Lynaugh*, 492 U.S. 302 (1989) and holding that standards of decency have evolved such that execution of the mentally retarded is now cruel and unusual punishment). Defendants assert that imposition of the death penalty has decreased world-wide and point to anecdotal evidence concerning inmates whose convictions and death sentences have been overturned or were pardoned based on new evidence of innocence.

While recent advances in technology have enabled some defendants to successfully challenge their convictions and death sentences based on claims of actual innocence, I do not find that society's standards of decency have evolved such that the death penalty is *per se* cruel and unusual punishment in violation of the Eighth Amendment. *See McClesky*, 481 U.S. at 300-03; *Gregg*, 428 U.S. at 168-87, 177-78, 183 (the death penalty is not *per se* cruel and unusual punishment in violation of the Eighth Amendment); *United States v. Jones*, 132 F.3d 232, 242 (5th Cir. 1998), *aff'd*, 527 U.S. 373 (1999).

### 3. Due Process

I also reject Defendant William Sablan's assertion that implementation of the FDPA is a *per se* violation of the Fifth Amendment because it deprives innocent defendants of an opportunity to prove their innocence in violation of their procedural due process rights, and because it creates an undue risk of executing innocent defendants in violation of their substantive due process rights. Defendant relies on *United States v. Quinones*, 205 F. Supp. 2d 256, 257, 268 (S.D.N.Y. 2002), in which the United States District Court for the Southern District of New York held that because of the frequency at which innocent persons are convicted of capital crimes,

> implementation of the [FDPA] not only deprives innocent
> people of a significant opportunity to prove their innocence,
> and thereby violates procedural due process, but also creates
> an undue risk of executing innocent people, and thereby
> violates substantive due process.

*Id.* However, the Second Circuit Court of Appeals reversed the district court in *United States v. Quinones*, 313 F.3d 49, 53 (2d Cir. 2002), holding that the defendant's Fifth Amendment due process claim was foreclosed by the United States Supreme Court's decision in *Herrera v. Collins*, 506 U.S. 390, 407-08 (1993). In *Hererra*, the Supreme Court held that the petitioner was not entitled to federal habeas relief where his habeas petition was based solely on a claim of actual innocence, without an accompanying federal constitutional violation. *Hererra*, 506 U.S. at 397-98, 418-19. According to the Second Circuit, "defendant's argument that execution deprives individuals of the opportunity for exoneration" is without merit because, under *Herrera*, "there is no fundamental right to a continued opportunity for exoneration throughout the course of one's natural life." *Quinones*, 313 F.3d at 52. I agree with the reasoning of the Second Circuit in *Quinones* and find that *Herrera* disposes of Defendant's procedural due process argument.

In addition, I do not find Defendant's substantive due process argument persuasive. While the dissent in *Hererra* stated that the petitioner in that case could raise a substantive due process challenge on the grounds that he was actually innocent, this is not the argument advanced by Defendant William Sablan in this case. While execution of an innocent person would surely violate that person's substantive due process rights, here Defendant argues the FDPA is a *per se* violation of the Fifth Amendment. In order for Defendant to succeed on his *per se* challenge, he must show that the FDPA always

operates to deprive defendants of their substantive due process rights.  Defendant has failed to make such a showing.

      C.    <u>Eighth Amendment and Fifth Amendment Challenges (as applied)</u>

Defendant Rudy Sablan asserts several challenges to the FDPA as applied to the facts of this case.  I address each in turn.

      1.    <u>Racial Discrimination</u>

Defendant Rudy Sablan challenges imposition of the death penalty in this case by asserting that it is applied in a racially discriminating manner.  Defendant Rudy Sablan relies on the DOJ Survey discussed in section II.B.1, *infra.*  To the extent Defendant Rudy Sablan is challenging the operation of the FDPA generally, this argument is foreclosed for the reasons set forth in section II.B.1 of this Order.  To the extent Defendant Rudy Sablan is challenging the operation of the FDPA "as applied" to the facts of this case, his claim must fail because he has not established "the existence of purposeful discrimination" that had a "discriminatory effect" on him.  *See McCleskey v. Kemp*, 481 U.S. 279, 293 (1987) (defendant must prove that one of the decisionmakers in his case acted with discriminatory purpose); *United States v. Bin Laden*, 126 F. Supp. 2d 256, 260-61 (S.D.N.Y. 2000) (under *McClesky*, systemic statistics alone an not establish discriminatory intent in a particular prosecution).  In addition, it is difficult to see how the information in the DOJ Survey regarding racial and geographic disparities would suggest that the FDPA was discriminatory as applied to Defendant Rudy Sablan in this case because Defendant was born in the Commonwealth of Northern Mariana Islands, the victim in this case was Hispanic, and the crime occurred in the District of Colorado.

2.   <u>Suppression of Evidence</u>

Defendant Rudy Sablan also asserts that the death penalty is unconstitutional as applied in this case because the Government has suppressed material penalty phase evidence, namely evidence of his intoxication.   Specifically, Defendant Rudy Sablan complains that the Government destroyed penalty phase evidence by (1) failing to obtain a blood alcohol level for Rudy Sablan following the incident; (2) allowing the mouthwash bottle to be lost or destroyed; (3) destroying the trash bags used to make and store intoxicants in the cell; and (4) destroying other evidence of Rudy Sablan's intoxication the night of the incident.   Defendant Rudy Sablan asserts that the deprivation of this mitigation evidence is a violation of his rights under the Fifth and Eighth Amendments and constitutes the suppression of exculpatory evidence in violation of the holding in *Brady v. Maryland*, 373 U.S. 83 (1963).

As discussed above, due process and the Eighth Amendment require that the sentencer consider "any relevant mitigating evidence" presented during the penalty phase of a capital case.   *See Eddings v. Oklahoma*, 455 U.S. 104, 113-14 (1982).   Underlying this requirement is the "principle that punishment should be directly related to the personal culpability of the criminal defendant."   *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989).   I note that Defendant Rudy Sablan previously raised these same complaints concerning the destruction of intoxication evidence in his Motion for Sanctions for Loss and Destruction of Evidence by Government Agents, filed August 17, 2001.   I denied that motion by Order dated October 14, 2003, in which I concluded that the evidence allegedly lost or destroyed by the Government (i.e. the mouthwash bottle and plastic bag used to make intoxicants)

did not amount to a due process violation because the evidence was only potentially useful to the Defendant, there was no bad faith associated with its loss, and comparable evidence of intoxication exists. *See* Order at 55-59. I also concluded that "the record does not indicate that any behavior of Rudy or William Sablan would have <u>clearly</u> indicated that they were too intoxicated at the time of the offense to form the requisite *mens rea*." Order at 61-62.

Defendant acknowledges the conclusions set forth in the October 14, 2003, Order, but requests that I reconsider my conclusion that comparable evidence of intoxication exists in this case. Specifically, Defendant complains that the ability of an expert to testify on the effects of alcohol on Defendant is related to the availability of evidence of the level of intoxication. I note that the instant motion relates to Defendant's ability to present certain mitigation evidence during the penalty phase, which is different from the posture under which I first examined the argument. While the BOP did not obtain a blood alcohol level for Defendant Rudy Sablan immediately following the incident, Defendant will not be prevented from presenting evidence of both the fact of his intoxication and the level of his intoxication during the penalty phase. There is evidence available to the defense that Defendant Rudy Sablan was drinking the night of the incident, and there is some evidence concerning Defendant's level of intoxication, including evidence of the blood alcohol level of the victim and the behavior of Defendant immediately following the incident, as captured on videotape. Thus, I conclude that the Government's failure to preserve certain evidence of Defendant Rudy Sablan's intoxication does not amount to a due process violation or an Eighth Amendment violation.

I also do not find that Defendant Rudy Sablan has established that the Government's failure to preserve certain intoxication evidence amounts to a *Brady* violation in this case.  In order for Defendant to establish a *Brady* violation, he must show that "the evidence is material either to guilt or punishment."  *Brady*, 373 U.S. at 87 ("[E]vidence is material [and constitutional error results from its suppression] only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"); *see United States v. Bagley*, 473 U.S. 667, 682 (1985); *United States v. Agurs*, 427 U.S. 97, 104 (1976); *see also Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 1565 (1995).  Again, I have already determined that the evidence in question was only potentially useful and that comparable evidence of intoxication exists.

3.   <u>Mitigation Evidence</u>

Defendant William Sablan moves to dismiss the NOI asserting that 18 U.S.C. § 3593(f) is unconstitutional as applied to him because it precludes the jury from considering certain potentially mitigating evidence.  Section 3593(f) provides that prior to jury deliberation during the penalty phase, the court:

> shall instruct the jury that, in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or any victim may be.

18 U.S.C. § 3593(f).  The statute also requires that the jury certify that:

> consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or any victim may be.

18 U.S.C. § 3593(f).  According to Defendant William Sablan, his race, national origin, and religious beliefs are crucial components of his mitigation evidence and the effect of § 3593(f) is to preclude introduction of such evidence.  Specifically, Defendant contends that he will seek to introduce: (1) information regarding William's upbringing in Saipan and how his upbringing shaped his attitude towards individuals of other races; (2) how race and nation origin impact what defense counsel describes as William's "historic victimization" and his diagnosis of post traumatic stress disorder; (3) the way in which William's belief in the "Taotaomo'na spirits" affected his behavior; (4) and how race of the victim and William's understanding that the victim belonged to the "Mexican Mafia" affected his behavior.

A death penalty statute violates the Eighth Amendment if it precludes consideration of any relevant mitigating evidence.  *See Lockett v. Ohio*, 438 U.S. 586, 604, 608 (1978).  However, I do not read § 3593(f) as precluding the mitigation evidence Defendant William Sablan seeks to introduce.  "An act of Congress ought not be construed to violate the Constitution if any other possible construction remains available."  *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979).  While the FDPA explicitly prohibits the jury from considering evidence of a defendant's race, national origin, and religious beliefs, it also provides that the fact finder shall consider *any* mitigating factor including "factors in

the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8). Here, the mitigation evidence Defendant William Sablan seeks to introduce consists of information concerning his background and life experiences and how those experiences shape his beliefs and affect his behavior. *See United States v. Webster*, 162 F.3d 308, 356-57 (5th Cir. 1998) (the FDPA does not prevent a defendant from presenting evidence of "the effects and experiences of race"); *United States v. Llera Plaza* 179 F. Supp. 2d 444, 459-60 (E.D. Pa. 2001) (accord); *United States v. Cooper*, 91 F. Supp. 2d 90, 101-02 (D. D.C. 2000) (accord). Defendant can present this mitigation evidence without "using race in and of itself as a proxy" for his set of beliefs and experiences. *Webster*, 162 F.3d at 357.

D.    Fifth and Sixth Amendments

I next address Defendant William Sablan's Motion to Dismiss the Second Superseding Indictment on the Grounds that it is Insufficient under the Fifth and Sixth Amendments to Charge a Capital Offense, filed August 29, 2005. This motion was joined in by Rudy Sablan. The Government filed a response to this motion on October 21, 2005.

The premise of the motion is that the FDPA's mens rea eligibility findings stated in 18 U.S.C. § 3591(2)(A)-(D) must be specific to the individual defendant. Defendant William Sablan argues that the Notice of Special Findings in the Second Superseding Indictment is deficient in that it charges that he acted to cause Joey Estrella's death while having all four of the relevant statutory mental states. By alleging all four mental states and by failing to specify the conduct in which William Sablan engaged, it is argued that the indictment fails to provide sufficient notice as required by the Fifth and Sixth Amendments.

-33-

Thus, Defendant contends that the Second Superseding Indictment should be dismissed.

Turning to my analysis, I first address the role of the gatekeeping factors set out in 18 U.S.C. § 3591(a)(2)(A)-(D). These are not aggravating factors, but codify the command of the Supreme Court "to limit the imposition of the death penalty to those murderers who both undertake felony participation and demonstrate at least reckless indifference to human life." *United States v. Webster*, 162 F.3d 308, 355 (5th Cir. 1998). "Satisfaction of these elements only begins the death penalty inquiry; it does not and cannot establish death penalty eligibility by itself." *Id.* In other words, § 3591(a) "does not set forth aggravating factors, but rather serves as a preliminary qualification threshold." *Id.*; *see also United States v. Minerd*, 176 F. Supp. 2d 424, 445 (W.D. Pa. 2001). The gatekeeping factors are not weighed. *Minerd*, 176 F. Supp. 2d at 445. If at least one of the four gatekeeping factors is found by the jury, the jury then moves on to consideration of the aggravating and mitigating factors. *Id.*

Turning to the sufficiency of an indictment under the Fifth and Sixth Amendments, two criteria are looked at in deciding whether an indictment is sufficient: (1) "whether the indictment 'contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet;' and (2) 'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" *Russell v. United States*, 369 U.S. 749, 763-64 (1962) (internal quotes and quotations omitted). In other words, "[t]he accused must (1) be informed of the charges against him so that he may present his defense and not be surprised by the evidence offered at trial; and (2) be

protected against another prosecution for the same offense." *United States v. Ailsworth*, 138 F.3d 843, 849 (10th Cir. 1998).

An indictment is generally sufficient if it states the offense in the words of the statute itself, "'as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *United States v. Kovach*, 208 F.3d 1215, 1218 (10th Cir. 2000) (internal quotes and quotation omitted); *see also United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988). However, "[w]here guilt depends so crucially upon . . . a specific identification of fact . . . an indictment must do more than simply repeat the language of the criminal statute." *Russell*, 369 U.S. at 764. In that circumstance, while "the language of the statute may be used in the general description of an offense, . . . it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" *Id.* at 765.

I conclude that Defendant William Sablan's motion to dismiss should be denied. First, I note that Defendant has not cited any authority for his argument that listing all four of the *mens rea* elements, as compared to one or two, makes the indictment insufficient under the Fifth and Sixth Amendments as defined in *Russell*. Second, I agree with the Government that Defendant has adequate notice of the crime charged, *i.e.*, that he had specific intent to kill Estrella. *See United States v. McVeigh*, 944 F. Supp. 1478, 1488 (D. Colo. 1996) ("a sentence of death may not be imposed for anything other than an intentional killing as defined in § 3591(a)(2)). Third, the *mens rea* elements simply

address how this specific intent was manifested as a matter of law — they do not relate to a specific identification of fact upon which Defendant needed to be apprised in the indictment.   Thus, *Russell* does not require any heightened specificity as to these elements.

Finally, I agree with the Government that Defendant's motion is based on an inaccurate premise, *i.e.,* that the Government is required to select one of the four gatekeeping intent factors found in § 3591(a)(2)(A)-(D).   This proposition has been rejected by several courts.   *See United States v. Cooper*, 91 F. Supp. 2d 90, 109-10 (D.D.C. 2000) (rejecting argument that the Constitution requires the government to select which of the four intent factors it relies on); *see also Webster*, 162 F.3d at 355 ("[t]he fact that a defendant could satisfy more than one of [the gatekeeping factors] via the same course of action does not . . . constitute impermissible double counting since they are not aggravating factors); *Minerd*, 176 F. Supp. 2d at 445 (rejecting argument that the gatekeeping factors are unnecessary and duplicitous, and finding that "it makes no difference whether the jury agrees that one of the factors has been proved or whether all have been proved).

In fact, *Cooper* rejected a very similar argument to that made herein.   There, the defendant asserted that "the government's 'notice [of intent to seek the death penalty] attributes four separate mental states to Mr. Cooper but does not specify which particular mental stage occurred at the time the capital eligible offenses occurred." *Id.*, 91 F. Supp. 2d at 109.   Without citing any case authority (as here), the defendant argued that the Fifth and Eighth Amendments required the government to elect which mental state it relied on.

*Id.* The United States District Court for the District of Columbia rejected this argument stating, "[i]f the jury were permitted to find that more than one of the intent factors in section 3591(a)(2) existed, and then was subsequently permitted to weigh those factors as aggravating circumstances, this Court might agree with Cooper." *Id.* However, since the intent factors "are not aggravating factors to be weighed against mitigating factors. . . there is no risk of skewing because the jury finds intent, and then starts with a clean slate in evaluating separate aggravating factors." *Id.* at 110. I find that analysis instructive here and adopt it.

Based on the foregoing, I find no error in the Government selecting all four gatekeeping factors. If one factor is found by the jury such that there is a preliminary threshold finding of intent, the jury will then proceed to consider the aggravating and mitigating factors but cannot weigh the gatekeeping factors. *See Minerd*, 176 F. Supp. 2d at 445. Because these factors are not weighed by the jury, Defendant is not prejudiced by inclusion in the indictment of more than one of the factors. *Id.* (holding that "even if the jury finds that more than one of the intentions have been established, this cannot tip the balance towards a sentence of death because the gatekeeping factors under the FDPA are not weighed"); *see also Webster*, 162 F.3d at 355; *United States v. Battle*, 979 F. Supp. 1442, 1468 (N.D. Ga. 1997), *aff'd*, 173 F.3d 1343 (11th Cir. 1999). I also find that the indictment is not rendered insufficient under the Fifth and Sixth Amendments simply because it relies on all four *mens rea* factors.

E.     Other Challenges

1.     Motions to Strike

a.     Motion to Strike the NOI On Grounds That It Relates to an Indictment That Has Been Superseded

I next address William Sablan's Motion to Strike the Government's Notice of Intent to Seek the Death Penalty on the Grounds that it Relates to an Indictment that Has Been Superseded [Wm DP-11] filed August 29, 2005. Defendant William Sablan argues therein that it is implicit in § 3593(e) of the FDPA that the NOI be filed *after* the indictment charging the offense. Here, the NOI was filed prior to the Superseding Indictment and the Government did not supersede its NOI after the filing of the Superseding or Second Superseding Indictment. Accordingly, Defendant asserts that the NOI should be stricken. Defendant Rudy Sablan joined in this motion. A response was filed by the Government on October 21, 2005, and a reply was filed November 17, 2005.

Turning to my analysis, the FDPA states that if "the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice:

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

-38-

18 U.S.C. § 3593(a).  The statute also says that "[t]he court may permit the attorney for the government to amend the notice upon a showing of good cause."  *Id*.

The original indictment in this case was filed December 12, 2000.  It did not define the offenses at issue as capital offenses or list aggravating factors or the *mens rea* requirement as required under the FDPA.  *See United States v. Allen*, 406 F.3d 940, 943 (8th Cir. 2005), *petition for cert. filed* (Sept. 29, 2005) (No. 05-6764).  The Government filed its Notices of Intent to Seek the Death Penalty as to William and Rudy Sablan on May 1, 2001.  A Superseding Indictment was filed June 18, 2003, and the Second Superseding Indictment was filed July 21, 2003, both of which charge capital offenses.  These Indictments also list the aggravating factors the Government intends to rely on as well as the *mens rea* elements as required under the FDPA.  The issue is whether the NOI needed to be filed after the Superseding or Second Superseding Indictment and, if not, whether a new or superseded NOI was required after the filing of same.

I find that the original NOI should not be stricken and that the Government was not required to supersede its NOI after the filing of the Superseding and/or Second Superseding Indictment.  First, there is no requirement in the FDPA or the statute at issue that a NOI be filed after each indictment, or even that the NOI be filed after the indictment that charges the capital offense.  Instead, 18 U.S.C. § 3593(a) requires only that a NOI be filed "a reasonable time before the trial or before acceptance by the court of a plea of guilty."  Since trial is not set until January of 2007, I find that the NOI filed in May 2001 by the Government meets the requirement that the NOI be filed "a reasonable time before the trial."

-39-

Second, Defendant cites absolutely no authority that supports the relief sought in his motion.  While he asserts that it is implicit in § 3593(a) that the NOI be filed *after* the indictment charging "the offense", *i.e.*, the capital offense, the statute does not actually state this.  Further, as the Government recognizes, a superseding indictment does not in any way nullify the original indictment.  All of the indictments remain pending.  *See United States v. Bowen*, 946 F.2d 734, 736 (10th Cir. 1991).   Since the indictments remain pending, it is reasonable to assume that the NOI also remains pending and in force, even after the filing of a superseding indictment.

As to Defendant's argument that two out of the three attorneys who filed the NOI are no longer attorneys for the Government, I find this has no legal significance.  One of the attorneys who filed the notice, Brenda Taylor, is still on the case.  Further, Defendant has cited no authority which holds that the attorneys who file the NOI must remain counsel through the filing of any superseding indictments or the trial.  Indeed, a requirement that all counsel whose name appears on a NOI must remain on the case until it is resolved would be onerous and inconsistent with the present realities of the practice of law whereby attorneys change jobs and/or are reassigned duties on cases.

Finally, I note that at the hearing on this motion, the Government moved for leave to amend the NOI.  This request was granted by Order filed December 6, 2005.  Amended NOIs were filed in connection with the Second Superseding Indictment on December 21, 2005.  Thus, the argument that the Government did not file an amended NOI after the filing of the superseding indictments is now moot.

Based on the foregoing, I deny William Sablan's Motion to Strike the Government's

Notice of Intent to Seek the Death Penalty on the Grounds that it Relates to an Indictment that Has Been Superseded.

>   b.   Motion to Strike the Nonstatutory Aggravating Factor From the Government's NOI on the Basis that the FDPA Does Not Provide for Its Use

I now turn to William Sablan's Motion to Strike the Nonstatutory Aggravating Factor From the Government's Notice of Intent to Seek the Death Penalty on the Basis that the Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.*, Does Not Provide for Its Use [Wm DP-9] filed August 29, 2005.  This motion was joined in by Rudy Sablan, and seeks to strike the nonstatutory aggravating factor of "future dangerousness" from the Government's NOI.  The Government filed a response to this motion on October 21, 2005.

Defendant argues in the motion that 18 U.S.C. § 3591(a) requires that before an aggravating factor can be considered as a basis for a death sentence, it must be set out in section 3592.  Section 3592 sets forth 16 statutory aggravating factors, and does not include future dangerousness.  Additionally, § 3593(e) states that in order to recommend death, all jurors must determine that at least one "aggravating factor required to be considered under section 3592(c) is found to exist."  Future dangerousness is not one of the factors set out in 3592(c).  Defendant contends that the concluding paragraph of § 3592(c) contradicts § 3591(a) and § 3593(e) by providing that "the jury . . . may consider whether any other aggravating factor for which notice has been given exists."  He also contends that the FDPA contains no specific mention of nonstatutory aggravating factors.

I find that Defendant's motion should be denied.  The argument that nonstatutory aggravating factors are not permitted by the FDPA is not supported by a plain reading of

the statute.  18 U.S.C. § 3592(c) states in addition to the 16 listed aggravating factors that

the jury or court "may consider whether any other aggravating factor for which notice has

been given exists."   Second, the Supreme Court has indicated that nonstatutory

aggravating factors are proper and permissible for a jury to consider, so long as they are

constitutional and proper in the particular case.  See *Jones v. United States*, 527 U.S. 373,

395 (1999).

In *Jones*, the Court stated that the Eighth Amendment "permits capital sentencing

juries to consider evidence relating to the victim's personal characteristics and the

emotional impact of the murder on the victim's family in deciding whether an eligible

defendant should receive a death sentence."   Nonstatutory aggravating factors, just as

statutory aggravating factors, must "guide the jury's discretion" and "distinguish this murder

from any other murder."  *Id.* at 400.  Other courts that have held nonstatutory aggravating

factors may be considered include *United States v. Robinson*, 367 F.3d 278, 293 (5th Cir.)

(rejecting the statutory construction argued by Defendant), *cert. denied*, 543 U.S. 1005

(2004); *United States v. Cooper*, 91 F. Supp. 2d 90, 100 (D.D.C. 2000); *United States v.*

*Frank*, 8 F. Supp. 2d 253, 264-65 (S.D.N.Y. 1998); *see also United States v. Chanthadara*,

928 F. Supp. 1055, 1057 (D. Kan. 1996) (denying motion to strike the nonstatutory

aggravating factors as unconstitutional under the Fifth and Eighth Amendments).

I now turn to the more substantive argument — that the nonstatutory aggravating

factor at issue here, future dangerousness, is not proper and/or is unconstitutional *per se*.

Defendant first argues on this issue that to the extent nonstatutory aggravating factors are

proper, they are limited to "circumstances surrounding the offense" or "victim impact."  As

noted above, the Supreme Court held in *Jones* that the jury may consider aggravating factors relating to victim vulnerability and victim impact. *Jones,* 527 U.S. at 402. However, this does not mean that the nonstatutory aggravating factors are limited to such evidence. Indeed, the FDPA itself does not limit these factors in any way. *See* 18 U.S.C. § 3592(c) (stating that the jury may consider "any other aggravating factor for which notice has been given"). Courts construing this statute have recognized that the purpose of the nonstatutory aggravating factors is to provide for individualized sentencing. *See Cooper* 91 F. Supp. 2d at 100. Accordingly, the Government may select any factor that it believes appropriate to the case, subject to constitutional challenges and a finding by the court that the factor is constitutional and admissible in the particular case. *Id.*; *Frank*, 8 F. Supp. 2d at 264.

Second, as to the argument that future dangerousness is not a proper aggravating factor and/or is unconstitutional, the Supreme Court has held that future dangerousness is appropriate in connection with a state death penalty scheme. *California v. Ramos*, 463 U.S. 992 (1983). *Ramos* held that an instruction inviting the jury to assess whether the defendant was someone whose probable future behavior made it undesirable that he be permitted to return to society, thus focusing the jury on the defendant's future dangerousness, was proper and was not unduly speculative. *Id.* at 1002-03.

*Ramos* relied on a prior decision in *Jurek v. Texas*, 428 U.S. 262 (1976) that rejected a constitutional challenge to the Texas capital sentencing scheme which asked the jury to find at least one statutory aggravating circumstance and then asked the jury to consider, among other things, the defendant's future dangerousness. Quoting *Jurek*,

*Ramos* stated:

> 'It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system. . . . And any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose. For those sentenced to prison, these same predictions must be made by parole authorities. The task that a Texas jury must perform in answering [whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society] is thus basically no different from the task performed countless times each day throughout the American system of criminal justice. What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine. . . .

*Ramos*, 463 U.S. at 1002-03 (quoting *Jurek*, 428 U.S. at 274-76).

The Eighth Circuit relied on *Ramos* in rejecting a constitutional challenge under the FDPA to a future dangerousness aggravating factor. *United States v. Allen*, 247 F.3d 741, 788-89 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002). *Allen* first found that "there is little danger of duplication with the statutory aggravating factors because future dangerousness is nowhere mentioned in the list of sixteen aggravating factors for homicide." *Id.* at 788. Second, *Allen* found that "given the broad language of the FDPA as to the allowance of nonstatutory aggravating factors, there is no reason under the FDPA why future dangerousness cannot be presented to the jury." *Id.* Finally, *Allen* stated, "we have little doubt that future dangerousness to society and to prison officials and other inmates during incarceration is relevant to the jury's final determination of

whether a death sentence should be imposed. *Id.*[1]  I adopt the reasoning in *Allen* and reject Defendant's *per se* constitutional challenge to future dangerousness as a nonstatutory aggravating factor.

I next address the argument that allowing the jury to consider future dangerousness is contrary to congressional intent regarding the use of prior criminal conduct.  In that regard, while the FDPA allows prior criminal conduct to be used as an aggravating circumstance, it specifically limits it to certain types of prior felony convictions.  *See* 18 U.S.C. § 3592(c)(2), (3), (4), (10), (12), and (15).  Defendant argues that the bulk of the instances of "violent conduct" or "threats of violence" the NOI alleges in support of future dangerousness did not result in felony convictions.  Accordingly, he argues that such evidence should be stricken as beyond Congress' stated intent in § 3592(c).

Defendant relies on the statutory maxim that "[w]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode . . . . *expressio unius est exclusion alterius*", citing *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974).

This argument was specifically rejected by the Eighth Circuit in *Allen*.  The defendant in *Allen*, like here, argued that because six of the 16 statutory aggravating

---

[1]   Other district courts have also allowed this aggravator to be presented to the jury, although the issue of its appropriateness was not addressed specifically in the appeal.  *See United States v. Robinson*, 367 F.3d 278, 293 n. 23 (5th Cir. 2004) (the government's notice indicated that it sought to prove that Robinson had exhibited a lack of remorse that was suggestive of propensity to commit violence — the Fifth Circuit held that § 3592 permits the consideration of nonstatutory aggravating factors without discussing the specific ones at issue in the case), *cert. denied*, 543 U.S. 1005 (2004); *United States v. Jones*, 132 F.3d 232, 250-51 (5th Cir. 1998) (the district court allowed the government to submit the nonstatutory aggravating factor that the defendant "constitutes a future danger to the lives and safety of other persons as evidenced by specific acts of violence by the defendant Louis Jones" — the Fifth Circuit did not address this since the jury did not find the existence of this factor), *aff'd*, 527 U.S. 373 (1999).

factors listed in § 3592(c) of the FDPA preclude using prior criminal acts, they cannot be

used as a nonstatutory aggravating factor in connection with future dangerousness.  The

Eighth Circuit disagreed, stating:

> As noted previously, the FDPA specifically allows 'any other aggravating factor for which notice has been given.' 18 U.S.C. § 3592(c). In addition, the use of criminal history in sentencing has long been an accepted practice, even in the death penalty context. *See, e.g., Tuilaepa [v. California]* , 512 U.S. [967,] 976 [1994] (upholding use of prior criminal activity sentencing factor); *Zant [v. Stephens]*, 462 U.S. [862,] 888 [1983] (stating that '[n]othing in the United States Constitution prohibits a trial judge from instructing a jury that it would be appropriate to take account of a defendant's prior criminal record in making its sentencing determination'). 'Both a backward-looking and a forward-looking inquiry are a permissible part of the sentencing process. . . .' *Tuilaepa*, 512 U.S. at 977. . . . Furthermore, Holder points to no authoritative federal precedent in support of his assertion that use of this factor violates the Constitution. In fact, the Supreme Court has noted that sentencing courts have 'considered a defendant's past criminal behavior, even if no conviction resulted from that behavior.'

*Id.* at 789 (internal quotations omitted).  I find that *Allen* is persuasive and adopt its

reasoning in rejecting Defendant's argument.

I do note, however, that *Allen* stated a duplication concern, *i.e.*, that allowing the

Government to introduce prior criminal acts under both the statutory aggravating factors

and the future dangerousness nonstatutory aggravating factor may result in duplication or

double counting.  *Id.* at 789-90.  *Allen* held that duplication or double counting of

aggravating factors "can impermissibly skew a jury in favor of imposing a death sentence,"

although it found no duplication under the circumstances of that case.  *Id.*  In this case,

it is premature and improper to speculate what evidence may be presented as to future

dangerousness, and whether the Government's evidence may result in duplication.  I simply raise this issue as a possible concern to be addressed at a later stage of the litigation, if any party believes that the evidence as presented actually is duplicative.

          c.    Motion to Strike the "Especially Heinous or Depraved" Statutory Aggravating Factor On the Grounds that It is Vague and Overbroad

I next address Defendant William Sablan's Motion to Strike the Statutory Aggravating Factor of "Especially Heinous or Depraved" From the Indictment and the Government's Notice of Intent to Seek Death Penalty on the Grounds that it is Vague and Overbroad in Violation of the Eighth Amendment [Wm DP-7] filed August 29, 2005. Defendant Rudy Sablan joins in this motion.  The Government filed a response to this motion on October 21, 2005, and a reply was filed November 17, 2005.

This motion indicates that the "Notice of Special Findings" in the Second Superseding Indictment alleges that William and Rudy Sablan "committed the murder of Joey Jesus Estrella in an especially heinous or depraved manner in that it involved serious physical abuse to the victim."  *See* Second Superseding Indictment, § 1(g).  While this generally tracks the wording of the statutory aggravating factor set out in 18 U.S.C. § 3592(c)(6), it excludes the words "cruel" and "torture" from the statutory definition. Defendant argues that causing death is *per se* serious physical abuse, and the language of this factor as defined in the Second Superseding Indictment fails to provide inherent restraint on the arbitrary and capricious infliction of the death penalty.  In other words, Defendant asserts that the aggravating factor as defined in this case does not have a common-sense core of meaning which a jury is capable of understanding, since the jury

could interpret the factor as applicable to any and all murders.  Accordingly, Defendant argues that the aggravating factor fails to perform the narrowing function required by the Constitution and is vague and invalid.

Turning to my analysis, the Supreme Court has indicated that "[t]o be eligible for the death penalty, the defendant must be convicted of a crime for which the death penalty is a proportionate punishment." *Tuilaepa v. California*, 512 U.S. 967, 971 (1994).  "To render a defendant eligible for the death penalty in a homicide case, . . . the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase." *Id*. at 971-72.  The aggravating circumstance must meet two requirements.  *Id*. at 972.  "First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder." *Id*. (citing *Arave v. Creech*, 507 U.S. 463, 474 (1993) ("If the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty, the circumstance is constitutionally infirm") (emphasis in original).  In other words, the aggravating circumstance must not be overbroad.  "Second, the aggravating circumstance may not be unconstitutionally vague." *Id*.  This analysis is one under the Eighth Amendment.  *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).

As to a claim that an aggravating factor is overbroad, the court must decide if the jury "'fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty.'" *Jones v. United States*, 527 U.S. 373, 401 (1999) (quoting *Arave*, 507 U.S. at 474) (emphasis in original).  "[A]n overbroad aggravator could invite arbitrariness into the capital sentencing decision, in violation of the Eighth Amendment."

-48-

*United States v. Burgeois,* 423 F.3d 501, 510 (5th Cir 2005).

As to a vagueness challenge, "a vague propositional factor creates an unacceptable risk of randomness, the mark of the arbitrary and capricious sentencing process prohibited by *Furman v. Georgia*, 408 U.S. 238 (1972)." *Tuilaepa*, 512 U.S. at 974.   To determine whether an aggravating factor is vague, the court must determine whether "the factor ha[s] some 'common-sense core of meaning . . . that criminal juries should be capable of understanding." *Id.*; *see also Jones*, 527 U.S. at 400.   In other words, there must be a principled means to distinguish those that receive the penalty from those that do not. *Maynard*, 486 U.S. at 362 (citing *Furman*, 408 U.S. at 310).[2]

In connection with the aggravating circumstance at issue, the Supreme Court in *Maynard* held that the language of "especially heinous, atrocious or cruel", standing alone, does not give adequate guidance to the jury. *Id.* at 363-64.  This is because "an ordinary person could honestly believe that every unjustified, intentional taking of human life is 'especially heinous.'" *Id.* at 364.[3]  However, *Maynard* indicated that if the heinous or cruel aggravator is construed to require torture or serious physical abuse, the aggravating factor would be constitutional.  *Id.* at 364-65.  *Maynard* also held that such a construction was

---

[2]   *See also Godfrey v. Georgia*, 446 U.S. 420, 428 (1980) (the sentencer's discretion must be channeled "by 'clear and objective standards' that provide 'specific and detailed guidance' and that 'make rationally reviewable the process for imposing a sentence of death'") (internal footnotes and quotations omitted); *Zant v. Stephens*, 462 U.S. 862, 877 (1983) ("[t]o avoid [a] constitutional flaw, an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder").

[3]   The Supreme Court found to similar effect in *Godfrey*, 446 U.S. at 428-29 (finding that the language "outrageously or wantonly vile, horrible and inhuman", standing alone, did not imply any inherent restraint on the arbitrary and capricious infliction of the death sentence since "[a] person of ordinary sensibility could fairly characterize almost every murder" in this manner).

not the only one that would be constitutionally acceptable.  *Id.* at 365.

18 U.S.C. § 3592(c)(6) states as to this aggravating factor that the jury may consider that "[t]he defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim."  The United States Court of Appeals for the Tenth Circuit and other courts that have construed the constitutionality of § 3592(c)(6) hold that it is constitutional since the words "heinous, cruel or depraved" are limited to offenses that involved torture or serious physical abuse.  *United States v. Chanthadara,* 230 F.3d 1237, 1262 (10th Cir. 2000), *cert. denied*, 534 U.S. 992 (2001); *United States v. Jones*, 132 F.3d 232, 249-50 (5th Cir. 1998), *aff'd*, 527 U.S. 373 (1999); *see also United States v. Hammer*, 25 F. Supp. 2d 518, 541 (M.D. Pa. 1998); *United States v. Frank*, 8 F. Supp. 2d 253, 277-78 (S.D.N.Y. 1998); *United States v. Nguyen*, 928 F. Supp. 1525, 1533-34 (D. Kan. 1996).

Based on the foregoing authority, if the issue in this case were simply whether the statutory aggravating factor as written in § 3592(c)(6) was constitutional, the answer would clearly be yes.  However, I agree with Defendant that this case is not necessarily controlled by *Chanthadara* and the other cases cited above because the Government deleted certain words from § 3592(c)(6) in connection with the charging documents in this case.  Specifically, the Second Superseding Indictment and the NOI deleted the words "cruel" and "torture" from the statutory definition of the aggravating factor.

Thus, the issue becomes whether the aggravating factor as written in this case, which is a modification of the language of § 3592(c)(6), is constitutional under the Eighth Amendment.  I find, for the reasons set forth below, that the aggravating factor as worded

in the Second Superseding Indictment and the NOI is not vague or overbroad within the meaning of the Eighth Amendment.  Thus, I deny William Sablan's motion to strike the aggravating factor on those grounds.

First, I find that the aggravating factor as charged in the SSI is not vague under the Eighth Amendment .  I find that even with the deletion of the words "cruel" and "torture", the aggravating factor has a "'common-sense core of meaning . . . that criminal juries should be capable of understanding." *Tuilaepa*, 512 U.S. at 974.  While the words "especially heinous or depraved" would, standing alone, be unconstitutional, these words are limited by requiring that the commission of the murder in an especially heinous or depraved manner involve "serious physical abuse".

As stated earlier, the Supreme Court has indicated that limitation of the heinous or depraved aggravating factor is constitutional if limited to offenses involving torture or serious physical abuse.  *Maynard*, 486 U.S. at 365.  The Tenth Circuit has held to the same effect.  *Chanthadara*, 230 F.3d at 1262.  Torture or serious abuse, as discussed in those cases, is used disjunctively, indicating that either one of these things could be proved and that both are not required.  Further, the Supreme Court has indicated that limiting the heinous or depraved aggravating factor to offenses involving torture or serious abuse is not the only way that the aggravating factor could be constitutional.  *Maynard*, 486 U.S. at 365.  While I recognize that the Government has not cited any authority upholding the constitutionality of this aggravating factor where it is limited only to offenses involving serious physical abuse, a fair reading of *Maynard* and *Chanthadara* indicates that offenses involving either torture *or* serious physical abuse sufficiently limit this

aggravating factor such that it is not vague.

I also reject Defendant's overbreadth argument.  Defendant argues that the aggravating factor as stated by the Government is overbroad in that it would apply to all persons who commit murder, *i.e.*, he asserts that every murder involves some type of serious physical abuse.  I disagree.  First, while every murder arguably involves some physical abuse, not every murder will involve serious physical abuse.  *See Frank*, 8 F. Supp. 2d at 278.  For example, murders from poison or a single gun shot are arguably different in terms of the physical abuse inflicted on the body than a murder involving multiple stab wounds and/or desecration of the body.  Thus, I find that the heinous and depraved aggravating factor as worded in the Second Superseding Indictment and the NOI does narrow the class of persons eligible for the death penalty, as required by law.  *See Zant v. Stephens*, 462 U.S. 862, 877 (1983).

I also note that any overbreadth or vagueness in the term "serious physical abuse" can be cured by jury instructions that define what serious physical abuse is and how it differs from murders that do not involve serious physical abuse.  For example, the Fifth Circuit rejected a vagueness and overbreadth challenge to an instruction that defined "serious physical abuse" to mean "a significant or considerable amount of injury or damage to the victim's body which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty" and which required that "the defendant must have specifically intended the abuse apart from killing."  *United States v. Hall*, 152 F.3d 381, 414-415 (5th Cir. 1988), *abrogated on other grounds in United States*

*v. Martinez-Salazar*, 528 U.S. 304 (2000); *see also United States v. Jones*, 132 F.3d at 250 n. 12 (defining serious physical abuse the same way as *Hall*).  Indeed, in determining whether an aggravating factor is constitutional, the Supreme Court has looked at the way the factor was defined.  *See, e.g., Godfrey*, 446 U.S. at 431-33.

Based on the foregoing, I deny William Sablan's Motion to Strike the Statutory Aggravating Factor of "Especially Heinous or Depraved" From the Indictment and the Government's Notice of Intent to Seek Death Penalty on the Grounds that it is Vague and Overbroad in Violation of the Eighth Amendment.

> d.    Motion to Strike the "Especially Heinous or Depraved" Statutory Aggravating Factor on the Grounds that It Substantively Amends the Indictment and Fails to Narrow the Class of Death-Eligible Defendants

I next address William Sablan's Motion to Strike the Statutory Aggravating Factor of "Especially Heinous or Depraved" From the Government's Notice of Intent to Seek Death Penalty on the Grounds that It Substantively Amends the Indictment and Fails to Relevantly Narrow the Class of Death-Eligible Defendants in Violation of the Eighth Amendment [Wm DP-8] filed August 29, 2005.  A response was filed by the Government on October 21, 2005, and a reply was filed November 17, 2005.

The motion indicates that the NOI substantially broadens the "especially heinous or depraved" aggravating factor stated in the Second Superseding Indictment by adding that "[s]erious physical abuse may be inflicted either before or after death and does not require that the victim be conscious of the abuse at the time it was inflicted."  NOI at 4. Defendant argues that this additional language was not presented to the grand jury,

violating the requirements of *United States v. Booker*, 543 U.S. 220 (2005); *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and their progeny. I reject this argument.

First, I note that one court in this circuit previously ruled that the death notice and the factors stated therein do not need to be submitted to the grand jury. Specifically, the United States District Court for the District of Kansas found that "[t]he factors in the death notice are not 'elements of the offense charged' such that they must be presented to a grand jury." *United States v. Nguyen*, 928 F. Supp. 1525, 1545 (D. Kan. 1996). Instead, "these factors come into play only after a grand jury indicts and a *petit* jury convicts a defendant of the offenses charged." *Id.* *Nguyen* concluded, "Defendant cites no convincing authority, nor has the court been able to locate any, which requires that the death notice be presented before a grand jury." *Id.* (internal footnote omitted). I find the reasoning of *Nguyen* persuasive. As in that case, Defendant has presented no authority, and I find none, that the NOI or its expansion of the "especially heinous or depraved" aggravating factor needs to be submitted to the grand jury. Accordingly, I find that Defendant's motion should be denied.

Also supporting my decision to deny Defendant's motion are the cases which hold that NOIs do not need to list details about the evidence the Government intends to present. *See United States v. Mayhew*, 380 F. Supp. 2d 936, 947-48 (S.D. Ohio 2005) (citing *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999) and other cases). In *Battle*, the Eleventh Circuit affirmed the district court's decision to allow the Government to amend its notice of intent to seek death on the eve of sentencing proceedings, stating, "[t]he Government is not required to provide specific evidence in its notice of intent . . . .

[s]o, when it seeks to amend that notice to add only specific evidence — and not new

'factors', it does not need to show good cause; if anything, the Government is helping the

defendant some by forewarning him of the evidence to be used against him." *Battle*, 173

F.3d at 1347.  Since the NOI does not need to include specific details, the fact that the

Government chooses to include details inures to the benefit of the Defendant and does not

require that the Government reveal those details to the grand jury.

Indeed, there is authority that holds the means by which the Government intends

to prove the offense do not need to be presented to the jury.  *See Government of the Virgin*

*Islands v. Douglas*, 812 F.2d 822, 826 (3rd Cir. 1987) ("'neither the Constitution, the

Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment

must put the defendants on notice as to every means by which the prosecution hopes to

prove that the crime was committed'") (quotation omitted); *see also United States v.*

*Calderon-Pena*, 383 F.3d 254, 257 (5th Cir. 2004) ("[t]he elements of an offense . . . come

from the statute of conviction, . . . not from the particular manner and means that attend

a given violation of the statute") (internal citation omitted), *cert. denied*, 543 U.S. 1076

(2005); *United States v. Sayan*, 968 F.2d 55, 60 (although jury instructions conceivably

could have broadened the theories regarding the method the defendant used to achieve

the crime, a constructive amendment did not occur since the defendant was not convicted

of a crime materially different from that in the indictment).  The language complained of by

Defendant in the NOI is analogous, in my opinion, to a statement of what the evidence

would be as to the aggravating factor and/or the means by which the factor will be proved.

Thus, under the above authority, the NOI's statement at issue did not need to be presented

to the grand jury.

As to *Booker*, *Apprendi* and their progeny relied on by Defendant, those cases require only that facts (other than prior convictions) which increase the maximum penalty for the crime be charged in an indictment and presented to the grand jury. *See Apprendi*, 530 U.S. at 490. Here, as noted earlier, the aggravating factor of "especially heinous or depraved" was presented to the grand jury in the Second Superseding Indictment, and the sentencing jury will presumably be asked at the penalty phase whether this factor applies. While the aggravating factor itself may increase the punishment (since the jury could rely on that factor to make Defendant eligible for death), the statement by the Government in the NOI that the factor applies to events that occurred either before or after death does not increase the punishment. It simply explains to the jury the means by which the aggravating factor could be proved.

To the extent that Defendant is arguing the NOI is a constructive amendment of the indictment, I disagree. "'A constructive amendment of an indictment occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have convicted of an offense other than that charged in the indictment.'" *United States v. Gauvin*, 173 F.3d 798, 805 (10th Cir. 1999) (quoting *United States v. Hornung*, 848 F.2d 1040, 1046 (10th Cir. 1988) (further quotation omitted)).

In this case, the aggravating factors are not an element of the offense, nor is the explanation of the "especially heinous or depraved" factor in the NOI. Further, the

aggravating factors and any explanation of them do not modify the essential elements of the offense. Instead, the aggravating factor only serves to make Defendant death eligible. Finally, a constructive amendment has been held not to occur where jury instructions broaden the theories regarding the method the defendant used to achieve a particular end, so long as the defendant was not convicted of a crime materially different from that alleged. *See Sayan*, 968 F.2d at 60. In this case, as explained earlier, the NOI's statement that serious physical abuse can be inflicted before or after death explains only the method or means by which such abuse can be inflicted. As such, I reject the argument that the NOI and its explanation of the "especially heinous or depraved" aggravating factor involves a constructive amendment to the indictment.

Defendant also argues in support of his motion that to define the aggravating factor as broadly as the NOI does would violate the Eighth Amendment. Specifically, Defendant asserts that allegations of abuse inflicted after, rather than before, death do not relevantly and reasonably justify the imposition of the death penalty in this case, as compared to other murders. Defendant also asserts that such a broad definition would be inconsistent with the focus of the other statutory aggravating factors, which relate to a defendant's actions preceding, or resulting in, the death of another person. I reject this argument.

The Tenth Circuit addressed the construction of § 3592(c)(6) in *United States v. Chanthadara*, 230 F.3d 1237 (10th Cir. 2000). There, the district court instructed the jury on the "especially heinous or depraved" aggravating factor as defined in § 3592(c)(6). *Id.* at 1261. The instruction given to the jury in connection with this factor told the jury that "[s]erious physical abuse — unlike torture — may be inflicted either before or after death

and does not require that [the victim] be conscious of the abuse at the time it was inflicted." *Id*. On appeal, the defendant argued that the instruction "improperly permitted the jury to consider abuse inflicted on the victim after she lost consciousness or died." *Id*. The defendant did not, however, "suggest a constitutional problem with allowing the jury to consider abuse to the victim after death as an aggravating factor." *Id*. Rather, he argued that the district court misinterpreted § 3592(c)(6). *Id*.

The Tenth Circuit stated that only the Fifth Circuit had addressed whether § 3592(c)(6) applies to abuse occurring after loss of consciousness or death, citing *United States v. Hall*, 152 F.3d 381, 415 (5th Cir. 1998), *abrogated on other grounds in United States v. Martinez-Salazar*, 528 U.S. 304 (2000)). *Chanthadara*, 230 F.3d at 1261. The Tenth Circuit noted that *Hall* upheld § 3592(c)(6) instructions nearly identical to the one tendered by the district court. *Id*. at 1261-62. As stated in *Chanthadara*, "[t]he *Hall* court concluded that the jury could consider conduct that occurred after the victim lost consciousness because it indicated that 'the killing was committed in a depraved manner in that it provide[d] an indication that Hall relished the killing.'" *Id*. at 1262 (quoting *Hall*, 152 F.3d at 415). The Tenth Circuit found no error in the district court's instruction based on *Hall* and the fact that defendant cited no authority suggesting an alternate instruction of § 3592(c)(6). *Id*.

While *Chanthadara* did not involve a constitutional challenge, as here, the constitutional issue was addressed and rejected in *Hall*. Because *Hall* was cited with approval by the Tenth Circuit in *Chanthadara*, it seems likely that the Tenth Circuit would reject a constitutional challenge. The constitutional issue was also addressed in another

Fifth Circuit case, *United States v. Jones*, 132 F.3d 232 (5th Cir. 1998), *aff'd*, 525 U.S. 809

(1998). *Jones* found that an aggravating factor under § 3593(c)(6) and accompanying

instruction virtually identical to that given in *Hall* was not constitutionally vague. *Id.* at 249-

50 and n. 12.   I find those cases persuasive and adopt their reasoning to reject

Defendant's constitutional challenge under the Eighth Amendment.

I also note that there are other cases that, while not directly addressing the issue

raised by Defendant, also support my finding that the heinous or depraved aggravating

factor is not unconstitutional when applied to actions that occur after death.   *See*

*Richmond v. Lewis*, 506 U.S. 40, 50-51 (1992) (approving Arizona Supreme Court's

holding that  factors which could lead to a finding of heinousness or depravity included the

infliction of gratuitous violence on the victim and the needless mutilation of the victim, and

stating "[a] murderer who intentionally drives a car over his victim twice arguably commits

'gratuitous violence,' . . . whether or not he knows that the victim is dead after the first

pass. . . . [a]n Arizona sentencer would not commit constitutional error by relying on th[e

heinous or depraved] factor in sentencing that murder"); *Lewis v. Jeffers*, 497 U.S. 764,

783-84 (1990) (finding that in light of the Arizona Supreme Court's narrowing construction

of the especially heinous or depraved aggravating circumstance, which included

consideration of the infliction of gratuitous violence, "the Arizona Supreme Court could

reasonably have concluded that respondent committed the murder in an 'especially

heinous . . . or depraved manner', and stating "the Arizona Supreme Court's finding that

respondent had inflicted gratuitous violence is rationally supported by the evidence that

respondent "'climbed on top of the dead victim and hit her in the face several times which

eventually resulted in additional wounds and bleeding'") (quotation omitted).[4]

Finally, I address Defendant's argument that many of the statutory aggravating factors in § 3592(c) relate to a defendant's actions that precede and ultimately result in death, and that allowing the "heinous or depraved" aggravating factor to apply only where the abuse occurred after death could run contrary to the scheme evinced by Congress. Defendant cites *People v. White*, 870 P.2d 424, 448 (Colo. 1994) (en banc) (holding that to construe the aggravator that the defendant committed the offense in an especially heinous, cruel, or depraved manner to encompass defendant's action that occurred a day after the acts that caused the death of another runs contrary to the statutory scheme "which calibrates punishment based on events or circumstances arising from the defendant's actions that cause the death of another person").

I find that this argument must be rejected. First, I note that it is premature and improper to speculate what the evidence will be, *i.e.*, the Government may present evidence that the serious physical abuse occurred both before and after death. Second, even if the evidence supports an inference that the serious physical abuse occurred only after death, the United States Supreme Court and the Tenth Circuit have indicated, as stated above, that acts occurring after death are relevant to this aggravating factor. Finally, *White* is a case construing Colorado law, and has no applicability to the FDPA.

---

[4] *See also Ceja v Stewart*, 97 F.3d 1246, 1249 (9th Cir. 1996) (approving Arizona Supreme Court's finding that "a heinous and depraved finding could be predicated on 'additional violence[] over and above that which was necessary to carry out the defendant's criminal intent'", and noting that "[t]he Arizona Supreme Court concluded that Ceja's 'conduct in continuing his barrage of violence, inflicting wounds and abusing his victims, beyond the point necessary to fulfill his plan to steal, beyond even the point necessary to kill'" warranted the aggravating factor) (quotation and internal quotation marks omitted).

2.    Challenges Based on the Constitution of the Northern Mariana Islands and Other International Agreements

Both William and Rudy Sablan filed motions seeking to preclude consideration of the death penalty based on the Constitution of the Northern Mariana Islands and other international agreements.  Specifically, William Sablan filed a Motion to Dismiss the Government's Notice of Intent to Seek the Death Penalty on the Grounds that the Constitution of the Commonwealth of the Northern Mariana Islands Forbids Application of the Death Penalty to Him [Wm DP-13] on August 29, 2005.  Rudy Sablan filed a Motion to Preclude Consideration of the Death Penalty Based on International Agreements and the Constitution of the Commonwealth of the Northern Mariana Islands [R-46] on September 2, 2005.  The Government filed a consolidated response on October 21, 2005.

The motions assert that the Government's NOI should be stricken and consideration of the death penalty should be precluded based on the fact that the Constitution of the Commonwealth of the Northern Mariana Islands ["CNMI"] prohibits the death penalty. Since Defendants are natives and citizens of the Northern Mariana Islands, they assert they are entitled to the rights and protection of the CNMI Constitution.  Defendants argue that the CNMI Constitution is entitled to the consideration and respect of the United States Government under principles of comity, international law, public and international policy, the Geneva Convention, and a Covenant between the United States and the CNMI. Further, Defendants assert that they are not voluntarily in the United States and did not submit to its jurisdiction.

I find that Defendants' motions should be denied.  By way of background, "[t]he

Northern Mariana Islands are a chain of thirteen single islands and one group of three small islands located in the western Pacific Ocean near Guam." *Saipan Stevedore Co. Inc. v. Director, Office of Worker's Compensation Programs*, 133 F.3d 717, 720 (9th Cir. 1989). Saipan, an island of which Defendants are both citizens, is in the Northern Mariana Islands. "In 1947, the United Nations designated Micronesia [which includes the Northern Mariana Islands] a 'strategic trust territory' and appointed the United States as trustee." *Id.* During the period that the United States was a trustee, it "had the power to apply federal laws in the Northern Mariana Islands, but did so only to a limited extent." *Id.*

However, "[i]n the early 1970s, the Northern Marianas ideologically diverged from the rest of Micronesia and sought a closer, more permanent relationship with the United States." *Id.* This resulted in a "legislative executive relationship which redefined the political relationship between the United States" and the CNMI, and resulted in the *Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States* ["Covenant"]. *Id.* This Covenant "established the [CNMI] as an unincorporated territory of the United States", and was ratified by Congress. *Id.* (citing 48 U.S.C. § 1801) (the full text of the Covenant is set out in the notes to § 1801). This Covenant "governs the relationship between the United States" and the CNMI. *Id.* at 720-21; *see also* Covenant, art. I, § 102.

The Covenant gives the people of CNMI the right to a certain level of "self-determination," stating they would "govern themselves with respect to internal affairs in

accordance with a Constitution of their own adoption." Covenant, art. I, §§ 101, 103.[5]  The

Constitution that was approved by the people of the CNMI states in Section 4 that in all

criminal prosecutions certain fundamental rights shall apply, and prohibits capital

punishment.

While the Covenant recognized that the Northern Mariana Islands would become

a self-governing commonwealth upon termination of the Trusteeship Agreement, the

Covenant expressly states that the CNMI is "in political union with *and under the*

*sovereignty of the United States of America.*"  *Id.*, art. I, § 101 (emphasis added); *see also*

*Northern Mariana Islands v. United States*, 279 F.3d 1070, 1072 (9th Cir. 2002) (the

Covenant "established the process by which the Northern Mariana Islands placed

themselves under the sovereignty of the United States as a Commonwealth"); *Temengil*

*v. Trust Territory of the Pacific Islands*, 881 F.2d 647, 650 (9th Cir. 1989) (the CNMI "is

now a part of the sovereign United States").  The Covenant of the CNMI "together with

those provisions of the Constitution, treaties and laws of the United States applicable to

the Northern Mariana Islands, will be the supreme law of the Northern Mariana Islands."

Covenant, art. I, § 102.  Further, the Covenant gives the right to the United States to enact

legislation in accordance with its constitutional processes which will be applicable to the

Northern Mariana Islands if it is also applicable to the States.  *Id.*, § 105.

To ensure that the Constitution of the CNMI was consistent with the Covenant and

"those provisions of the Constitution, treaties and laws of the United States applicable to

---

[5]  The Covenant also stated that "[t]he Government of the United States will give sympathetic consideration to the views of the Government of the Northern Mariana Islands on international matters directly affecting the Northern Mariana Islands. . . ."  Covenant, art. IX, § 914(a).

the Northern Mariana Islands", the Covenant provided that the Constitution would be submitted to the Government of the United States for its approval.  *Id.*, art. II, § 202. Pursuant to the Covenant, the citizens of the CNMI who were not already United States citizens were declared to be citizens, although they could instead choose to be "a national but not a citizen of the United States."  *Id.*, art. III, §§ 301-02.

Article V of the Covenant discusses the applicability of laws to the CNMI. § 502(a)(2) states that the laws not described in paragraph 1 ( § 502(a)(1)) "which are applicable to Guam and are of general application to the several States as they are applicable to the several States" are applicable to the CNMI.[6]  I agree with the Government that this encompasses the criminal laws, since these are applicable to Guam and the States.  *See* 18 U.S.C. § 5 ("[t]he term 'United States', as used in this title in a territorial sense, includes all places and waters, continental or insular, subject to the jurisdiction of the United States, except the Canal Zone"); *see also United States v. Taitano*, 442 F.2d 467, 469 (9th Cir. 1971) (rejecting argument that 18 U.S.C. § 1952 did not apply to Guam, relying on 18 U.S.C. § 5).  Defendants do not argue to the contrary.  Further, § 502(a) makes clear that the laws which are applicable to the CNMI include those "in existence on the effective date of this Section and subsequent amendments to such laws."

Construing the Covenant to include all laws applicable to the States and to Guam (except those specified in the statute) is consistent with several other cases, as well.  The Ninth Circuit held that the Quiet Title Act, which is applicable to Guam and to the States

---

[6]  Paragraph 1 of § 502(a) referred to laws which provide federal services and financial assistance programs and other laws unrelated to the criminal laws.

generally, was applicable to the CNMI under the terms of § 502(a)(2). *Northern Mariana Islands*, 279 F.3d at 1073. That case cited *Fleming v. Dep't of Pub. Safety*, 837 F.2d 401, 406 (9th Cir. 1988), which held that when § 502(a)(2) governs, it requires not only that the law being applied through section § 502(a)(2) be effective in the CNMI as it is in the States, but also that the CNMI be treated as if it were a State for purposes of that law), *overruled on other grounds by DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992)). *See also Micronesian Telecomm. Corp. v. NLRB*, 820 F.2d 1097, 1100-1101 (9th Cir. 1987) (holding that the National Relations Act would apply to the CNMI by way of section 502(a)(2), even if the Act did not apply in the CNMI by force of its own terms).

I find the cases cited in the previous paragraph persuasive and adopt their reasoning. Accordingly, I find that since the federal crimes in Title 18 are applicable to the States and Guam, they are applicable to the CNMI. While the FDPA was enacted after the Covenant became applicable, it can be construed as an amendment to the federal criminal laws that would also apply to the CNMI. As to such application, the CNMI is to be treated in a similar manner to the individual states in this country. Since states have no right to supersede the FDPA through their own Constitutions or laws that prohibit the federal death penalty, the CNMI also does not have this right.

I also note that § 503 of the Covenant exempted the applicability of certain laws of the United States, but did not include the criminal laws or subsequent amendments thereto, including the FDPA. Section 504 provided for the establishment of a Commission on Federal Laws "to survey the laws of the United States and to make recommendations to the United States Congress" as to which laws that were applicable to the CNMI should

-65-

be made inapplicable.   The Defendants have not shown that the FDPA was made inapplicable to the CNMI by that Commission.   Finally, I find that the FDPA is applicable to the CNMI pursuant to § 105 of the Covenant which gave the United States the right to enact legislation which is applicable to the CNMI.   This is subject to only one proviso:  if congressional legislation is not applicable to the states, the [CNMI] must be specifically named in the legislation to be effective in the CNMI.   *See Saipan Stevedore*, 133 F.3d at 721 (citing § 105).   Here, the FDPA (enacted after the Covenant became effective) was congressional legislation that was made applicable to the states; thus, under § 105 it also is applicable to the CNMI.

I also note that the Defendants are United States citizens pursuant to the Covenant. The crimes for which Defendants have been charged were committed in this country while Defendants were in the custody of the Bureau of Prisons.   The Vienna Convention and Geneva Conventions, as well as principles of international law and comity, simply do not apply in that circumstance.   Further, to say that a crime committed in Colorado while Defendants are in the custody of the Bureau of Prisons would not be subject to the death penalty strains credulity and is not supported by any law or case authority.

Finally, I reject Defendants' argument that they are in this country involuntarily and did not submit to its jurisdiction.   Defendants came to the United States in the custody of the Bureau of Prisons because they pled guilty to federal crimes in the United States District Court for the District of the Northern Mariana Islands.   Pleading to or being found guilty of a federal crime certainly brings Defendants within the jurisdiction of the United States and its laws, and the argument that Defendants are here involuntarily such that they

should not be subjected to the death penalty is without merit.

Based on the foregoing, I deny William Sablan's Motion to Dismiss the Government's Notice of Intent to Seek the Death Penalty on the Grounds that the Constitution of the Commonwealth of the Northern Mariana Islands Forbids Application of the Death Penalty to Him.  I also deny Rudy Sablan's Motion to Preclude Consideration of the Death Penalty Based on International Agreements and the Constitution of the Commonwealth of the Northern Mariana Islands.

III.   <u>CONCLUSION</u>

For the reasons set forth above, it is hereby

ORDERED that Defendant William Sablan's Motion to Strike the Government's Notice of Intent to Seek the Death Penalty on the Grounds That The Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.*, is Facially Unconstitutional [WM DP-1] filed August 29, 2005 (docket # 1518) is **DENIED**.  It is

FURTHER ORDERED that Defendant Rudy Sablan's Motion to Preclude Consideration of the Death Penalty for Unconstitutional Provisions and Procedures Established by 18 U.S.C. § 3591, *et seq.* [R-44] filed September 2, 2005 (docket # 1528) is **DENIED**.  It is

FURTHER ORDERED that Defendant William Sablan's Motion to Strike the Nonstatutory Aggravating Factor of Future Dangerousness from the Government's Notice of Intent to Seek the Death Penalty on the Grounds that the Factor Was Not Presented to the Grand Jury In Violation of the Fifth Amendment [Wm DP-10] filed August 29, 2005 (docket # 1509) is **DENIED**.  It is

FURTHER ORDERED that Defendant William Sablan's Motion to Strike "Notice of Special Findings" From the Second Superseding Indictment on the Grounds that the Grand Jury Has No Authority to Make Death-Eligibility Findings [Wm DP-12] filed August 29, 2005 (docket # 1507) is **DENIED**.  It is

FURTHER ORDERED that Defendant William Sablan's Motion to Strike the Death Penalty from Consideration on the Grounds that the Federal Death Penalty Experience under 18 U.S.C. § 848(e) and § 3591, *et seq.*, Operates in a Fundamentally Arbitrary and Capricious Manner and Therefore Violates the Fifth and Eighth Amendments [Wm DP-2] filed August 29, 2005 (docket # 1516) is **DENIED**.  It is

FURTHER ORDERED that Defendant William Sablan's Motion to Strike the Death Penalty from Consideration on the Grounds that the Death Penalty Constitutes Cruel and Unusual Punishment in Violation of the Eighth Amendment and is a *Per Se* Violation of Due Process Under the Fifth Amendment [Wm DP-3] filed August 29, 2005 (docket # 1515) is **DENIED**.  It is

FURTHER ORDERED that Defendant Rudy Sablan's Motion to Preclude Consideration of the Death Penalty as Cruel and Unusual Punishment Per Se and As Applied to the Facts of This Case, filed September 2, 2005 [R-45] (docket # 1529) is **DENIED**.  It is

FURTHER ORDERED that Defendant William Sablan's Motion to Dismiss the Government's Notice of Intent to Seek the Death Penalty on the Basis that the Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.*, is Unconstitutional as Applied to This Case Because it Precludes Consideration of Mitigating Evidence in Violation of the Eighth

Amendment [Wm DP-5] filed August 29, 2005 (docket # 1514) is **DENIED**.  It is

FURTHER ORDERED that Defendant William Sablan's Motion to Dismiss the Second Superseding Indictment on the Grounds that it is Insufficient under the Fifth and Sixth Amendments to Charge a Capital Offense [Wm DP-6] filed August 29, 2005 (docket #1513), is **DENIED**.  It is

FURTHER ORDERED that Defendant William Sablan's Motion to Strike the Government's Notice of Intent to Seek the Death Penalty on the Grounds that it Relates to an Indictment that Has Been Superseded [Wm DP-11] filed August 29, 2005 (docket # 1508) is **DENIED**.  It is

FURTHER ORDERED that Defendant William Sablan's Motion to Strike the Statutory Aggravating Factor of "Especially Heinous or Depraved" From the Indictment and the Government's Notice of Intent to Seek Death Penalty on the Grounds that it is Vague and Overbroad in Violation of the Eighth Amendment [Wm DP-7] filed August 29, 2005 (docket # 1512) is **DENIED**.  It is

FURTHER ORDERED that Defendant William Sablan's Motion to Strike the Statutory Aggravating Factor of "Especially Heinous or Depraved" From the Government's Notice of Intent to Seek Death Penalty on the Grounds that It Substantively amends the Indictment and Fails to Relevantly Narrow the Class of Death-Eligible Defendants in Violation of the Eighth Amendment [Wm DP-8] filed August 29, 2005 (docket # 1511) is **DENIED**.  It is

FURTHER ORDERED that William Sablan's Motion to Strike the Nonstatutory Aggravating Factor From the Government's Notice of Intent to Seek the Death Penalty on

the Basis that the Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.*, Does Not Provide

for Its Use [Wm DP-9] filed August 29, 2005 (docket # 1510) is **DENIED**.  It is

FURTHER ORDERED that Defendant William Sablan's Motion to Dismiss the

Government's Notice of Intent to Seek the Death Penalty on the Grounds that the

Constitution of the Commonwealth of the Northern Mariana Islands Forbids Application of

the Death Penalty to Him [Wm DP-13] on August 29, 2005 (docket # 1506) is **DENIED**.

It is

FURTHER ORDERED that Defendant Rudy Sablan's Motion to Preclude

Consideration of the Death Penalty Based on International Agreements and the

Constitution of the Commonwealth of the Northern Mariana Islands [R-46] on September

2, 2005 (docket # 1527) is **DENIED**.

Dated:  April 18, 2006

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge